Filed January 27, 1893.

---

No. 16,557.

BURTON, RECEIVER, *v.* MORROW ET AL.

133 221
143 614
133 221
146 349
133 221
158 205

SPECIAL FINDING. — *Containing Improper Matter.* — *Disregarding Improper Matter.*—*Can not be a Foundation for a Conclusion of Law.*—If the special findings embrace matters not proper or competent to be considered by the court, or facts which could only be established by considering incompetent evidence, such portion of the finding should be disregarded, and can not form a basis for a conclusion of law.

EVIDENCE.—*Contract.* — *Written Instrument.* — *When Parol Evidence Admissi-*

Burton, Receiver, *v.* Morrow *et al.*

*ble to Add to, Vary or Contradict.*—It is a rule of law that where a contract has been finally committed to writing all prior negotiations and stipulations between the parties are merged in the writing, and its terms can not be varied, contradicted or added to by parol evidence; but this rule has no application when the writing shows upon its face that it does not embrace the entire contract, and additional facts are necessary to show its nature and extent.

ASSIGNMENT.—*Equitable.*— *What Constitutes.*—*Liquidation of Firm.*—*General Assets.*— *What not a Part of.*—A firm of Wood & Smith were engaged in the cooperage business, manufacturing tierces for Kingan & Co., and the latter was to pay the firm of Wood & Smith one dollar for each tierce that was manufactured before needed, and was stored in the warehouse; and such tierces, on being examined and approved by said Kingan & Co., an additional sum of 37½ cents was to be paid for them. Said firm of Wood & Smith being indebted to one C., whose demand was due, and said firm of Wood & Smith being unable to pay it, one Wilson Morrow advanced the money desired, and said Wood & Smith made a note for the amount to said C., and C. endorsed the same to said Morrow; and, as additional security for the money advanced, Wood & Smith executed the following writing: "Indianapolis, August 15, 1891. We hereby agree to pay balance due on tierces stored in our brick warehouse, viz.: (3,500) three thousand five hundred tierces, and (2,000) two thousand in Patrick Manley's cellar; balance to be 37½ cents per tierce; amount subject to Wilson Morrow's demand, as fast as tierces are delivered during the packing season of 1891–92. Above tierces are fully insured by us. Wood & Smith."

*Held,* that the above writing, executed by Wood & Smith to Morrow, was an equitable assignment of the 37½ cent fund due on said tierces, and that said fund was not, on the liquidation of the firm, a part of the general assets of the firm.

From the Marion Superior Court.

*F. Winter* and *J. B. Elam,* for appellant.

*J. S. Duncan* and *W. S. Smith,* for appellees.

McBRIDE, J.—The firm of Wood & Smith was engaged in the cooperage business at Indianapolis, and manufactured tierces for Kingan & Co. By oral agreement between the parties, the tierces were to be delivered to Kingan & Co. at their packing house, subject to inspection and counting by a representative of the purchaser. Air-tight tierces thus delivered and accepted were to be paid for; but,

if, on inspection, any were found not air-tight, they were to be taken away by Wood & Smith and made air-tight.

If tierces were at any time manufactured faster than they were needed by Kingan & Co., the surplus tierces were to be stored by Wood & Smith in their warehouses until needed. For tierces accepted without being stored, Kingan & Co. paid $1.27½ each.

When tierces were stored, Wood & Co., from time to time, furnished to Kingan & Co. written statements showing the number stored and when they were stored; and on such written statement, Kingan & Co. advanced $1 for each tierce stored. When the stored tierces were needed, they were delivered to Kingan & Co., subject to a similar inspection to that given the tierces not stored, and when accepted 37½ cents additional was paid for each tierce—ten cents more being paid for each tierce stored than for those not stored, to cover the expense of storage, insurance, etc.

On the 15th day of August, 1891, more than 5,500 tierces were stored in warehouses belonging to Wood & Smith. Under this oral agreement, and on written statements furnished by them from time to time, Kingan & Co. had paid them $1 each on such stored tierces. At the same time Wood & Smith were indebted to one Mrs. Ada M. Carey in a sum exceeding $4,000, all of which was due. She, being in urgent need of money, demanded of them $1,793.19 of the sum thus due her, but they were unable to pay it at that time.

The appellee, Wilson Morrow, who was at the time attorney for Mrs. Carey, had some money; and it was orally proposed that if he would advance to Wood & Smith said sum of $1,793.19 for her use, they would execute to him their note for that sum, due in ninety days, which she should then endorse to Morrow, and that said Wood & Smith should then give to Morrow what they called a warehouse receipt for 5,500 of the tierces stored in their warehouses for Kingan & Co., on which said advance had

been made, and would transfer to Morrow the remaining sum of 37½ cents which was to be paid on each of said tierces, when they were delivered and accepted. Wood & Smith also said at the time that they thought they would be able to pay a part of the sum due on the note at its maturity, with money other than that coming to them from Kingan & Co., and that they would do so, if possible; in which case any money received from Kingan & Co. for the 5,500 tierces in excess of the amount necessary to pay the note should be paid to Mrs. Carey on the remainder of her claim against them.

This proposition was, on the same day, accepted and acted upon. The money was furnished by Morrow and applied upon the claim. The note was executed by Wood & Smith to Mrs. Carey, and was endorsed by her to Morrow; and Wood & Smith at the same time, executed to Morrow a writing, of which the following is a copy:

"INDIANAPOLIS, August 15, 1891.

"We hereby agree to pay balance due on tierces stored in our brick warehouse, viz.: (3,500) thirty-five hundred tierces, and (2,000) two thousand in Patrick Manley's cellar; balance to be 37½ cents per tierce; amount subject to Wilson Morrow's demand as fast as tierces are delivered during the packing season of 1891–92. Above tierces are fully insured by us.                          WOOD & SMITH."

With the exception of this writing and the note, nothing was reduced to writing.

The note was never paid. On the 6th day of October, 1891, and before its maturity, the firm of Wood & Smith had become insolvent; and Smith, one of the partners, commenced suit, in the Superior Court of Marion County, against his co-partner Wood, praying in his complaint for a dissolution of the partnership, and for the appointment of a receiver to take possession of its assets and settle up its affairs. He was successful, and the appellant was ap-

pointed as receiver. He qualified and entered upon the discharge of his duties as such, and is still thus acting.

The immediate controversy now before us grows out of the filing by Morrow of an intervening petition, after the maturity of the note, based upon the ground that, by virtue of the transaction, the details of which we have above recited, the property in the $37\frac{1}{2}$ cents due on each of the 5,500 stored tierces passed to him and Mrs. Carey, and asking an order on the receiver to account to him for an amount thereof sufficient to pay the amount due on the note, and to account to Mrs. Carey for the balance.

Kingan & Co. also filed an intervening petition claiming that title in the stored tierces was in them, and for an order protecting their rights, and obtained a decree adjudging them to be such owners, subject to their compliance with the terms of their contract relative to inspection, the payment of the balance due, etc.

In that adjudication, the court left the rights of the appellee undetermined, but directed the payment by Kingan & Co. to the receiver of the balance due on the tierces; and further decreed that such rights, if any, that the court might thereafter determine existed in favor of the appellee therein, should be transferred to the fund in the receiver's hands.

The Superior Court, in special term, having made a special finding of the facts, adjudged that the appellee was not entitled to any preference in the specific fund, but that the receiver was entitled to hold it as a part of the general fund for the benefit of the general creditors of the firm of Wood & Smith.

On appeal to the general term, this judgment was reversed, and the cause was ordered remanded to the trial court, with direction to set aside the judgment previously rendered, and to render a judgment which, in all material

matters, was in accordance with the contention of the appellee.

Two propositions are presented and argued by the appellant:

*First.* That the court erred in considering evidence of any parol contract or understanding between the parties, either prior to or contemporaneous with the execution of the writing above copied.

*Second.* That the court erred in adjudging that the appellee was entitled to a preference in the specific fund in controversy.

We will consider these questions in the same order.

The appellants base their first contention on the ground that the writing in question must be regarded as embodying the entire contract of the parties; that whatever may have been said at or prior to its execution must be regarded as superseded by the writing, which is, therefore, in and of itself the only competent evidence of the contract as finally consummated.

No question was raised on the admissibility of parol testimony, counsel explaining this on the ground that the trial being by the court, without a jury, it was assumed that incompetent and irrelevant evidence would be rejected and not considered. We think, however, that the question is, as they contend, brought fairly into the record by the special findings. If the special findings embrace findings upon matters not proper or competent to be considered by the court, or of facts which could only be established by considering incompetent evidence, such portion of the finding should be disregarded, and can not legitimately form a basis for a conclusion of law.

So far as relates to the principle of law invoked, it is elementary, as asserted by the appellant, that "When a contract has been finally committed to writing, all prior negotiations and stipulations between the parties are merged in the writing, and to that alone can the court refer to de-

termine the rights and obligations of the parties." No citation of authorities is necessary to reinforce the position of the appellant, in so far as this legal proposition is concerned.

If the writing in question can be regarded as the expression of the contract of the parties, its terms can not be contradicted, varied nor added to by parol; and the court was not justified in considering facts, the evidence of which rested entirely in parol.

The only room for question is as to the application of the principle to the facts before us.

The rule in question has no application when the writing shows upon its face that it does not embody the entire contract. Greenleaf's Evidence, section 284; see also note *b* to same in 15th ed.

Nor does it apply when the writing is shown to have been executed merely for the purpose of carrying into effect some provision of an oral contract embracing a wider field than that covered by the writing, and the controversy is over the larger contract, of which the writing is only an incident, or when the writing relates only to a separable and distinct part of such entire contract, or to a collateral matter. Rice on Evidence, section 163, p. 264, and many authorities there cited.

In our opinion the writing plainly bears upon its face, in more than one particular, evidence that it does not embody the entire contract. For instance, we find in it the following: "Amount subject to Wilson Morrow's demand."

Excluding parol testimony, what is Wilson Morrow's relation to the subject matter of the writing? He appears to have a demand, but what is the nature, extent and origin of his demand? Parol testimony is necessary before we can apply this portion of the writing to its subject matter. The nature and extent of his demand must be ascertained, and this involves an inquiry as to its origin. Indeed, to enable the court to apply and enforce this provision of the

writing requires parol testimony covering the entire range of the parol testimony admitted and the entire ground of the special findings based thereon.

The facts found clearly show that the writing was executed, not as embodying the entire contract of the parties, but for the purpose of carrying into effect one of its incidental and collateral provisions. The subject matter of the contract was the securing to Mrs. Carey payment of a portion of her claim against Wood & Smith. As, under the circumstances, this could not be accomplished directly, because of their inability to pay, the parties enter into an agreement, the purpose of which is to reach that end indirectly. The advancement of the money by Morrow, the execution of the note by Wood & Smith to Mrs. Carey, its endorsement by her to Morrow, and the execution by Wood & Smith to Morrow of the writing in controversy, while each separate and distinct acts, were each and all concurrent acts, and were all connected together as incidents of the larger contract, which embraced and required the doing of all these things. The note executed was in and of itself a complete contract. So was the contract of endorsement made by Mrs. Carey. It could with at least equal, if not better, reason be asserted that the note was the embodiment of the entire contract of the parties, as that the writing, which was executed as a mere collateral security for the payment of the note, embodied the entire contract.

The evidence was properly admitted, and the facts properly considered by the court.

To determine the remaining question as to whether or not the appellee is entitled to a preference in the specific fund referred to in the writing in controversy, it will be necessary to construe and determine the legal effect of that instrument. This can only be fairly done by considering it in the light of the circumstances attending its execution,

and in connection with the entire transaction of which it forms a part.

As construed by the appellant, the writing amounts to nothing more than an agreement by Wood & Smith to collect the money and pay it to Morrow on their debt to him. If this construction is correct, the appellant is plainly right in his contention. It is without doubt true, as argued by counsel for the appellant, that such an agreement would add nothing to the obligation of Wood & Smith to pay their debt, and would not establish any trust with respect to any specific fund.

The appellee insists that the writing, properly construed in the light of the attendant circumstances, operates as an appropriation, or setting apart of the fund referred to, to the payment of the note held by Morrow; that it is evident that Wood & Smith intended it to have this effect, and that Morrow also relied upon it as making such application of the fund. Thus construed, they contend that it operates as an equitable assignment of the specific fund to Morrow.

Our construction of the writing accords substantially with that claimed as correct by the appellee. We would be inclined to adopt this view, if we were to confine ourselves to that which appears on the face of the instrument, leaving out of sight the remaining features of the transaction. It will be observed that while, by the writing, Wood & Smith " agree to pay " the money, it is not agreed that they are to pay it out of the money yet to be paid on the tierces, or simply that they will pay Morrow when they collect the balance due on the tierces, but they " agree to pay the balance due "—that is, as we think it may be fairly construed, the very sum due is to be thus paid over. Thus construing the writing would make Wood & Smith trustees, with no other right in or control over the money than to receive and pay it over to Morrow. However, any possible doubt that might exist as to the correctness of this con-

struction, if we confine ourselves to the writing, disappears when we view the entire transaction.

When we consider that by this transaction Morrow was becoming the creditor of Wood & Smith, and that the writing was executed *as a security for the payment of the note evidencing their indebtedness to him,* that fact compels us to construe the instrument as transferring or assigning their right to the very fund itself. The rules of construction require us to give to the paper that construction, if possible, which will carry into effect the intention of the parties, considering, in connection with it, the entire contract, of which it formed a part or an incident. *Irwin* v. *Kilburn,* 104 Ind. 113.

That intention being that the writing should operate as a security, we should, if possible, without doing violence to the language used, so construe it that it will have the intended effect. To construe it as a mere agreement to pay out of the fund in question, or simply to pay the debt when that fund is collected, would effectually deprive it of all character of suretyship. As we have said, such an agreement would add nothing to the obligation of Wood & Smith, and would give Morrow no other interest than a mere contingency in the money due on the tierces. It can only operate as a security if it gives to Morrow an interest in and a right to the specific money yet to be paid by Kingan & Co. on the described tierces.

In our opinion the writing operated as an equitable assignment to Morrow of the fund, and that the Superior Court, in general term, committed no error in so adjudging.

Judgment affirmed.

ELLIOTT, J., took no part in the hearing and decision of this case.

Filed December 20, 1892.