**CITIZENS PROGRESS COMPANY, INC., Defendant-Appellant,**

v.

**JAMES O. HELD & CO., INC., Plaintiff-Appellee.**

No. 2–878A261.

Court of Appeals of Indiana, First District.

Aug. 17, 1982.

Sidney Mishkin, Indianapolis, for defendant-appellant.

John M. Heeter, Seymour M. Bagal, Indianapolis, for plaintiff-appellee.

NEAL, Judge.

Plaintiff-appellee James O. Held & Co., Inc. (Held) brought suit for breach of contract against Citizens Progress Company, Inc. (Citizens) in Marion Superior Court. Held claimed Citizens had breached an oral agreement to prepay for material as it arrived in Held's warehouse. Citizens denied the existence of the agreement and counterclaimed for breach of a written construction contract. After a bench trial the court concluded that neither party was entitled to relief and entered judgment accordingly. Only Citizens appeals.

We affirm.

### STATEMENT OF THE FACTS

The facts most favorable to support the judgment are as follows: Citizens was the prime contractor for the construction of buildings, courts, and facilities for tennis and other related activities for Racquet Clubs of America, Inc. (Racquet). Citizens entered into negotiations with Held, a specialty contractor, with the view of subcontracting to Held the installation of interior partitions, walls, flooring, ceilings and other

facilities. Commencing in early 1972 and continuing through the summer and into the fall, Citizens and Held had many conversations and negotiations encompassing cost, time, materials, etc. It was contemplated that many Racquet facilities would be built throughout the United States. Quantity buying with attendant discounts was discussed. The thread of the negotiations contemplated that the material would be stockpiled in Held's warehouse, and when the metal shell of a Racquet facility was complete, Held would put all the material necessary for its contract on a truck, and with a crew send it to the job site where the work would be expeditiously completed. Some of the stockpiled material would be Citizens', bought and paid for by it outside Held's contract. James O. Held, Held's president, testified of his concern as to how his company would be paid; cash flow to pay bills was an important consideration. He stated that storage was important also because Citizens had no place to store material. Although in the contracting business payments are usually made for 90 percent of the monthly earned estimates, this job was to be different. Held was stockpiling for a number of jobs, and this tied up a lot of money. James Held stated that before Citizens' letter of intent was issued, Citizens agreed to pay for the material when it reached Held's warehouse.

On September 27, 1972, at Held's request, Citizens issued to Held a letter of intent which read as follows:

"This letter will serve as a letter of intent to purchase from you all interior walls, doors and Ceilings as per your quotation for a minimum of six (6) club houses."

Wynn Fields, Vice President and General Manager of Citizens, acknowledged that the quotation was oral. James O. Held further testified that the material selection was oral. Thereafter, Held commenced to order material which, when delivered, was stored in its warehouse. Sometime, the record is vague as to when and how, the number of clubhouses was reduced to four. On October 9, 1972, Held issued to Citizens a document entitled "proposal." An amended version was issued to Citizens on November 8, 1972, entitled proposal no. 951, which stated in pertinent part that:

"Subject to the terms and conditions herein contained we submit this proposal for the installation of: (Listing material and contract price ($11,929))

\*　　\*　　\*　　\*　　\*　　\*

Terms of payment: net cash on all work started and completed in one calendar month. On all other work, 90% of the contract price of all labor and material furnished during the preceding month shall be paid on the 10th of each month. Final payment shall become due and payable 10 days after completion of the contract. This proposal is subject to written acceptance within 10 days of this date, and will become binding upon us as a contract when finally approved by our Credit department. There are no representations, promises, warranties, agreements, or understandings not expressed herein."

The proposal was on a printed form and was not addressed to any of the four jobs then being discussed.

On January 31, 1973, Held issued to Citizens invoices for material in their warehouse for each of four contracts, namely, at Lexington, Kentucky; Lawrence, New York; Fort Wayne, Indiana; and Anderson, Indiana. The billings were on Held's letterhead, and were identical in terms and amounts, as follows:

"For furnishing and installing Accoustical Ceilings and Vaughan Walls:

| | | |
|---|---|---|
| Amount of contract | | $12,144.00 |
| Value of material and/or work completed to date | | 7,934.00 |
| Material | 7,934.00 | |
| Labor | -0- | |
| Less 10% retainage | | 793.40 |
| Difference | | 7,140.60 |
| Less previous billings | | -0- |
| Amount of this billing | | 7,140.60 |

Terms of payment: net cash on all work started and completed in one calendar month. On all other work, 90 percent of the contract price of all materials and

labor furnished during the preceding month shall be paid on the 10th of each month. Final payment shall become due and payable 10 days after the completion of the contract."

On February 6, 1973, without having paid the January 31 billings, or disputed them except in regard to their amounts, Citizens issued three purchase orders to Held for contracts at Lexington, Lawrence, and Fort Wayne, which were numbered 3436, 3437, and 3438 respectively, each referring to the November 8, 1972 proposal numbered 951. All three were identical in content, but contained an alteration of the November 8 proposal in that the contract price was $12,-325 instead of $11,929. The purchase orders contained no method of payment. On February 15, 1973, Held issued three billings for material in the warehouse to Citizens, one for each of the purchase orders, by number and job. They were identical in amounts and are as follows:

| "Amount of contract | | $12,325.00 |
|---|---|---|
| Value of work and/or material completed to date | | 6,284.00 |
| Material | 6,284.00 | |
| Labor | -0- | |
| Less 10% retainage | | 628.00 |
| Difference | | 5,656.00 |
| Less previous billings | | -0- |
| Amount of this billing | | 5,656.00" |

Testimony by Held witnesses referred to these invoices as amended invoices. They were on the same letterhead, used the same format, and specified the same method of payment as the January 31, 1973 billings.

The crux of the controversy in the appeal is that Held claims that it was entitled to be paid for the material when it reached its warehouse. Held presented evidence that such an oral agreement was made prior to September 27, 1972, and that, when billed, Citizens even came and inventoried the material. Citizens claimed that it was not obligated to pay for the material until it was installed or reached its job site. Held brought this action for breach of contract, and Citizens filed its counterclaim for breach of contract, alleging damages for the excess cost of another contractor whom it employed to perform the contract. From a judgment that neither party should recover, only Citizens appeals. We previously remanded this cause to the trial court because of inadequate findings of fact and conclusions of law. Amended findings and conclusions were filed and are as follows:

## "AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

Pursuant to the Order of Indiana Court of Appeals Trial Court now makes and enters its Amended Findings of Fact, Conclusions of Law and Judgment as follows:

### FINDINGS OF FACT

1. Plaintiff is an Indiana corporation engaged in business as a specialty contractor with principal place of business in Indianapolis, Indiana.

2. Defendant, Citizens Progress Company, Inc., is engaged in the development and construction of indoor tennis clubhouses. (Defendant, Racquet Clubs of America, Inc., having been dismissed, all reference hereafter is made to Defendant, Citizens Progress Company, Inc.)

3. That in August of 1972 representatives of plaintiff and defendant discussed and agreed that plaintiff would supply and install all interior walls, doors and ceilings for a minimum of six clubhouses to be constructed by defendant.

4. That plaintiff made plans showing the type of interiors to be installed for defendant for a typical clubhouse.

5. That it was agreed that for the benefit of both parties said materials would be pre-purchased by plaintiff, stored in plaintiff's warehouse, that defendant would pay for said materials upon arrival at plaintiff's warehouse and that when defendant's job sites were ready, defendant would notify plaintiff and have said materials delivered.

6. That plaintiff requested prior to pre-purchase of said materials confirmation to proceed, and that on September

27, 1972, defendant by letter entitled Letter of Intent confirmed this for six clubhouses.

7. That subsequently through communication between plaintiff and defendant the number of clubhouses to be supplied with said interiors was reduced to four.

8. That on October 9, 1972, and November 8, [1972], plaintiff provided defendant with price quotations and proceeded to order the interior materials and they were in plaintiff's warehouse by the latter part of December of 1972.

9. That on January 31, 1973, plaintiff billed defendant for the materials in its warehouse for the clubhouses, but defendant responded by saying that the bills were not proper in that they contained charges for overhead and profit, but that otherwise they were proper.

10. That plaintiff agreed in regard to items for overhead and profit and submitted to defendant on February 15, 1973, billing for materials in his warehouse for the clubhouses.

11. That said bills for materials were never paid by defendant.

12. That subsequently plaintiff sent out similar billings which were not paid and about six months after delivery to its warehouse, plaintiff sold and disposed of the materials in other projects.

13. That the agreement between plaintiff and defendant was oral and by written materials.

## CONCLUSIONS OF LAW

1. That defendant breached the agreement between defendant and plaintiff by refusing to pay when billed in that it had agreed to pay for the interior materials when they arrived at plaintiff's warehouse.

2. That defendant having failed to pay as agreed, plaintiff was relieved from any obligation to deliver said materials to defendant's job sites and that any damages suffered by defendant are due to its own acts.

3. That plaintiff having resold and used materials in other projects did not

sufficiently establish compensable damage.

4. That, therefore, neither party is entitled to relief prayed.

Therefore, it is adjudged that plaintiff take nothing by its complaint and defendant take nothing by its counterclaim. Costs versus plaintiff. Parties notified by copies to be sent by Clerk of this Order.

/s/
_____
Mercer M. Mance, Judge
Marion Superior Court
Room No. 6
DATED: Mar. 24, 1980"

## ISSUES

Citizens alone appeals the court's decision, and presents the following issues:

I. Was the trial court's finding that Citizens breached a prior oral agreement with Held clearly erroneous under Trial Rule 52?

II. Was the trial court's finding that Citizens was not entitled to recover the damages it sustained from Held's breach of the contract between the parties clearly erroneous under Trial Rule 52?

We will discuss both issues together.

## DISCUSSION AND DECISION

Citizens, in its analysis of this case, asserts in argument the following: The letter of intent was no part of the contract. It was not even an offer, but a request for an offer. Whether Citizens breached the contract, as stated in the trial court's conclusion number 1, depends on the terms of the contract. Held's proposal of November 8, superseded all prior negotiations, and after that, additional negotiations, including the January 31, 1973 billings, were had. The purchase orders of February 6, 1973, being alterations of the contract price proposed on November 8, amounted to a counter offer. Thereupon, contends Citizens, "Held's issuance of its confirming invoices of February 15, 1972 [sic 1973] in which Held agreed to the fixed contract price of $12,325.00 was

equally clearly an acceptance of the counter offer under Indiana law and the contract was thereupon made." It cites *Foltz v. Evans*, (1943) 113 Ind.App. 596, 49 N.E.2d 358. Therefore, argues Citizens, this being a written contract, the testimony of James O. Held of the oral agreement to prepay for material prior to February 6, cannot be considered because of the parol evidence rule, citing 13 I.L.E. *Evidence* § 181. It cites *Seastrom, Inc. v. Amick Construction Co., Inc.*, (1974) 161 Ind.App. 309, 315 N.E.2d 431, for the proposition that the parol evidence rule is one of substantive law and prohibits the court from considering that evidence even though it was admitted at the trial. No proper evidence, it concludes, is in the record to show an agreement on the part of Citizens to pay for the material as it reached Held's warehouse.

■ Indiana recognizes the validity of a contract resting partly in writing and partly in parol, but such a contract is a mere oral contract. Where it is necessary to resort to oral evidence to establish the terms of the contract the whole contract is oral. *Board of Commissioners of Marion County v. Shipley*, (1881) 77 Ind. 553; 6 I.L.E. *Contracts* § 117.

■ Citizens relies upon the parol evidence rule recited in Corbin on Contracts, Sec. 573, restated in 13 I.L.E. *Evidence* § 181, which reads as follows:

"When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing."

However the rule does not apply when the writing shows upon its face that it does not embrace the entire contract, and additional facts are necessary to show its nature and extent. *Burton v. Morrow*, (1892) 133 Ind. 221, 32 N.E. 921; 13 I.L.E. *Evidence* § 185.

Continuing the reading of Corbin on Contracts, (One Volume Edition 1952) Sec. 573,

pp. 535–537, to which Citizens led us, we find that:

"Whether any specific written document has been assented to by the parties as the complete and accurate 'integration' of the terms of their contract is an ordinary question of fact. In determining this question, no relevant evidence is excluded on the mere ground that it is offered in the form of oral testimony.

\* \* \* \* \* \*

In innumerable cases, only a part of the terms of an agreement are reduced to writing; and the writing is not assented to as accurate and complete. This is often a difficult question of fact; in other cases there is no substantial dispute. It is upon the determination of this issue that the correctness of decisions giving or refusing effect to additional promises, warranties, and conditions must depend. Many documents, executed in the course of performance of an agreement, are not intended by either party as complete expressions of the terms of that agreement.

\* \* \* \* \* \*

... Of course, if the transaction was merely in the process of preliminary negotiation, no contract being yet made, the 'parol evidence rule' does not purport to prevent oral testimony; but neither does it apply if a *contract has been made and a writing has been signed but has not been assented to as the complete and accurate 'integration.'*" (Emphasis added.)

Citizens has assumed that the February 6, 1973 purchase orders issued by it, and the invoice issued by Held on February 15, 1973 in response thereto, formed the complete contract, and it has further assumed that the parties assented to those documents as a complete integration of the contract. It has pointed to no evidence other than the existence of the two documents, neither of which contained an integration clause as did the November 8 proposal. Under Citizens own argument, the November 8 proposal did not become part of the contract.

The trial court found in its findings of fact that the contract was based on both

oral and written agreements, and that Citizens agreed to prepay for the material when it was stored in Held's warehouse. If the findings are supported by the evidence, then it follows that the contract was in parol. Therefore, no error was committed by the court in accepting the testimony of the agreement by Citizens, and no error was committed in finding that Citizens breached the contract by refusing to pay Held's billing, which Citizens concedes it did not pay.

Our standard of review requires us to accord the trial court due regard for its opportunity to evaluate the evidence, and we must uphold its findings unless they are clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A) and Ind. Rules of Procedure, Appellate Rule 15(N). We will hold a trial court's findings to be clearly erroneous only where—although there is evidence to support them—a review of the entire record leaves us with the definite and firm conviction that a mistake has been made. *American Family Mutual Insurance Company v. Bentley*, (1976) 170 Ind.App. 321, 352 N.E.2d 860. In determining whether the findings are clearly erroneous, this court will construe the findings liberally in support of the judgment. *In re the Marriage of Miles*, (1977) 173 Ind.App. 5, 362 N.E.2d 171. However, nothing can be added to a special finding of fact by presumption, inference or intendment. *Cook v. Michigan Mutual Liability Company*, (1972) 154 Ind.App. 346, 289 N.E.2d 754.

We are of the opinion that the trial court's findings were not clearly erroneous in stating that the parties entered into a contract, part written, and part oral, wherein Citizens agreed to pay Held for material as it was warehoused. Many documents passed between the parties. The evidence reveals lengthy and prolonged conversations and negotiations wherein, by bits and pieces, the entire enterprise was constructed. It was not unreasonable for the court to find that a general oral agreement was struck in August, 1972, for Held to supply and install certain material in six clubhouses, as reflected by the September 27 letter

of intent, which gave few details and was only a confirmation of the previous agreement. We emphasize that this was not a formal contract which had been reduced to writing by counsel, and signed by both parties. Obviously many details remained to be resolved, such as shop drawings, types and quantity of material, pricing, and manner of payment, much of which was done orally.

Although Citizens argues that the November 8 proposal superceded all prior negotiations, this proposal does not refer to any of the particular jobs that had been discussed. It seems to be only a price list for a typical job of the type under negotiation, and it was not unreasonable for the trial court to find that it was only a price quotation. Evidence disclosed that Held commenced to order material to be warehoused even before the November 8 proposal, and long before the February 6 purchase orders, obviously based on the oral understandings and letter of intent. The November 8 proposal was also subject to a ten day acceptance limitation, and if it had been an offer, it would have expired at the end of that time. *Glencoe Cotton Mills v. Capital Paper Company*, (1920) 74 Ind.App. 239, 128 N.E. 699; *Foltz, supra*.

Citizens concedes in its brief that after November 8 there were "... additional negotiations and superseded proposals, including the January 31, 1973, invoices...." Some of these negotiations and proposals must have been oral. Held's January 31 invoices reflect a prior oral agreement on four specific jobs, Lexington, Lawrence, Fort Wayne, and Anderson, as there was no prior document which mentioned specific jobs. The February 6 purchase orders, which apparently deleted the Anderson job and changed the format price, can readily be interpreted as mere refinements of the previous existing partially oral and partially written agreements. Given the duration of the negotiations, the many documents involved, and the changes they reflect, the trial court was not required to find that the two documents relied on by Citizens contained the entire agreement of the parties.

Finally, the method of payment contained in the February 15 invoices "... on all other work 90% of all materials and labor furnished during the preceding month..." does not conclusively resolve the problem in the factual context here. The invoices show that Citizens is being billed only for materials furnished, and not labor. Against the background of the entire transaction this could be a current billing for 90 percent of the materials being stored in the warehouse, as was the January 31 billing. This could refer to the prior agreement of Citizens to prepay for materials as they reached the warehouse. Further, the word "furnish," in context, can mean "to the warehouse," not necessarily "to the job site." This is a reasonable interpretation which the court apparently adopted.

In conclusion, nowhere in the record do we find an indication that the February 6 purchase orders and the February 15 billing had been assented to by the parties as a complete and accurate integration of the contract. As noted above, this issue was a question of fact. We find that the findings and conclusions were supported by sufficient evidence. For these reasons, this cause is affirmed.

Affirmed.

RATLIFF, P. J., and ROBERTSON, J., concur.