



FILED

Feb 28 2025, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Stephen Turner,

*Appellant-Defendant*

v.

KLS Services, LLC,

*Appellee-Plaintiff*

---

February 28, 2025

Court of Appeals Case No.
24A-PL-1512

Appeal from the Hancock Circuit Court

The Honorable R. Scott Sirk, Judge

Trial Court Cause No.
30C01-2205-PL-706

---

**Opinion by Judge Bradford**

Judges Bailey and Foley concur.

**Bradford, Judge.**

# Case Summary

[1] In early 2020, Stephen Turner contacted KLS Services, LLC ("KLS"), through its principal Kenneth Shepherd, about building a house for Turner on the lot he owned in Greenfield ("the House"). Shepherd made it clear to Turner that the amount due to KLS would be its actual costs to build the House plus ten percent. Three versions of a written construction contract were prepared and approved by the parties, with the last version listing the price for construction at $180,000.00 and omitting the term regarding the ten percent in order to secure a loan to Turner in that amount from which KLS could draw to cover construction costs.

[2] Construction began in mid-2020 and was completed in August of 2021, and, while KLS received the entirety of the $180,000.00 loan, its total costs ended up being $246,388.76, attributable mostly to a pandemic-related, dramatic increase in the cost of building materials. KLS billed Turner for $264,000.00, and Turner refused to pay. KLS sued Turner for, *inter alia*, breach of contract, and the trial court entered judgment in favor of KLS for $66,388.76 and denied Turner's motion to correct error. Turner contends that the trial court abused its discretion in admitting certain evidence, erred in failing to conclude that KLS

had waived all claims against Turner by executing a lien waiver, and erred in entering judgment in favor of KLS. We affirm.

## Facts and Procedural History

[3] In February of 2020, Turner contacted KLS about building him the House. Three versions of a written construction agreement were prepared, with the second version a modified version of the first, and the third version a further modified version of the second. The first version (executed on April 2, 2020) listed the price to build the House as $150,000.00 plus a fee of ten percent of the cost of building the House. The second version changed the $150,000 to $180,000.00, included the same cost-plus language, and detailed changes to the foundation, septic, drywall, and overall square footage of the House. The third version (the "Third Contract") provided that "[t]he total price of [the House] is to be paid by the Owner to the Contractor for the completed [House] is $180,000" but did not contain any cost-plus language, which was removed at the urging of a credit-union representative to secure a loan to Turner to finance construction. Appellant's App. Vol. II p. 62. While Shepherd signed only the first version on behalf of KLS, he acknowledged initialing the second version and the Third Contract. It was understood by all concerned, however, that the price listed in all three versions was an estimate subject to change during construction.

[4] The Third Contract has a clause providing that "[t]his Agreement supersedes and all [*sic*] previous agreements, either oral or in writing, between the parties hereto with respect to the subject matter of this Agreement." Appellant's App.

Vol. II p. 70. The Third Contract, however, does not contain an integration clause stating that it represents the entirety of the agreement between the parties. After executing the Third Contract, Turner secured a loan in the amount of $180,000.00, from which KLS could draw to pay for construction of the House.

[5] Between January of 2020 and June of 2020 (when construction began), the cost of building materials increased between thirty-five and forty percent. Prior to the start of construction, Turner had indicated to Shepherd that the price he wanted to pay for the House was KLS's costs plus ten percent. Throughout the construction process, KLS would provide Turner with invoices, and Shepherd would discuss the costs with Turner before the work detailed in the invoices was done. Turner and Shepherd frequently met at the construction site to discuss what was being done, the costs of materials, and how construction costs were aligning with Turner's budget.

[6] Turner moved into the House on August 7, 2021. Pursuant to the draw schedule of Turner's loan, KLS received the full amount of the loan in August of 2021, and KLS executed a lien waiver as to the House. Construction on the House was completed in September or October of 2021, and, all told, KLS's costs to build the House came to $246,388.76. On or about November 17, 2021, KLS sent Turner a bill for $264,000.00 (presumably to be offset by the $180,000.00 that KLS had already received), which Turner refused to pay, indicating that he would pay no more than $180,000.00.

[7] On June 1, 2022, KLS filed suit against Turner, alleging breach of contract, unjust enrichment, and quantum meruit. On June 17, 2022, Turner responded and counterclaimed, alleging claims of frivolous claims, breach of contract, and unjust enrichment. A bench trial was conducted over several days beginning in July of 2023 and ending in January of 2024. During trial, Shepherd testified, without objection, that KLS's total costs to build the House had been $246,388.76. Both parties submitted proposed findings and conclusions, and, on March 28, 2024, the trial court entered judgment in favor of KLS for $66,388.76. On April 15, 2024, Turner moved to correct error, which motion the trial court denied on June 25, 2024.

## Discussion and Decision

[8] Turner contends that the trial court abused its discretion in denying his motion to correct error because the judgment it had entered in favor of KLS was clearly erroneous. "[G]enerally, a trial court has wide discretion to correct errors, and we will reverse only for an abuse of that discretion." *Paulsen v. Malone*, 880 N.E.2d 312, 313 (Ind. Ct. App. 2008). "An abuse of discretion occurs when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom, or is based on impermissible reasons or considerations." *Id*. The alleged error in this case, of course, is the entry of an allegedly erroneous judgment.

[9] Where, as here, both parties submitted proposed findings and conclusions, we

> cannot affirm the judgment on any legal basis; rather, this Court
> must determine whether the trial court's findings are sufficient to
> support the judgment. *Vanderburgh Co. Bd. of Commissioners v.*

*Rittenhouse*, 575 N.E.2d 663, 665 (Ind. Ct. App. 1991), *trans. denied*. In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id*. The judgment will be reversed only when clearly erroneous, *i.e.*, when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *DeHaan v. DeHaan*, 572 N.E.2d 1315, 1320 (Ind. Ct. App. 1991), *trans. denied*. Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id*. To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id*.

*Nelson v. Marchand*, 691 N.E.2d 1264, 1267 (Ind. Ct. App. 1998).

## I.    Admission of Evidence

[10]    Turner contends that the trial court abused its discretion in admitting evidence regarding several invoices issued by KLS to Turner.

> The admission and exclusion of evidences rests within the sound discretion of the trial court, and we review the exclusion of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002) (citations omitted). Even if a trial court errs in its evidentiary ruling, "we will not overturn the conviction if the error is harmless." *Appleton v. State*, 740 N.E.2d 122, 124 (Ind. 2001) (citing Ind. Trial Rule 61; *Cooley v. State*, 682 N.E.2d 1277, 1282 (Ind. 1997)). An error is harmless if "the probable impact of the evidence upon the jury is sufficiently minor so as not to affect a party's substantial rights." *Appleton*, 740 N.E.2d at 124 (citing *Fleener v. State*, 656 N.E.2d 1140, 1141–42 (Ind. 1995)).

*Griffith v. State*, 31 N.E.3d 965, 969 (Ind. 2015). It is well-settled that "reversible error cannot be predicated upon the erroneous admission of evidence that is

merely cumulative of other evidence that has already been properly admitted." *Matter of N.E.*, 228 N.E.3d 457, 473 (Ind. Ct. App. 2024) (citation and quotation marks omitted). While Turner did object to the admission of several invoices offered by KLS, the only purpose of the invoices was to establish KLS's total costs in building the House, and Turner did *not* object to Shepherd's testimony that KLS's total costs had been $246,388.76. Because the invoices were merely cumulative of Shepherd's testimony on this point, any error the trial court might have made in their admission can only be considered harmless. *See id.*

## II. Whether KLS Waived any Claim Against Turner

Turner also contends that KLS waived any claim it might have had against him when it executed a lien waiver upon receiving the proceeds from Turner's loan. The lien waiver provides, in part, as follows:

> The Contractor, for and in consideration of the sum of [] $180,000.00, and other good and valuable consideration, the receipt of which is hereby acknowledged, hereby waives and releases any and all liens, claims, or rights to lien of whatsoever kind or character on or against the Premises or the improvements located thereon, on account of labor, design, services, supplies, equipment and/or materials, furnished by the undersigned to or on account of the said Owner for the above described Premises.

Ex. Vol. IV p. 159. By its own terms, however, KLS waived liens, claims, or rights against the House and/or improvements located thereon, not Turner. "The common definition of 'lien' is a claim which one person holds on another's property as a security for an indebtedness or charge." *Hubble v. Berry*, 180 Ind. 513, 519, 103 N.E. 328, 330 (1913). KLS, therefore, did nothing more

than waive any security interest in the House, something it is not seeking to enforce in this action.

## III.   Whether the Judgment was Clearly Erroneous

[12]   Turner contends that the trial court erred in considering parol evidence to determine the nature of his agreement with KLS because the written agreement between the parties, as embodied by the Third Contract, was not ambiguous, limiting his obligation to $180,000.00. "The construction of the terms of a written contract is a pure question of law[.]" *S.C. Nestel, Inc. v. Future Constr., Inc.*, 836 N.E.2d 445, 449 (Ind. Ct. App. 2005). "When interpreting a contract, a court is to determine and give effect to the parties' intent through the language they use to express their rights and duties under the contract." *Gold v. Cedarview Mgmt. Corp.*, 950 N.E. 2d 739, 742–43 (Ind. Ct. App. 2011).

> Where terms of a contract are clear and unambiguous, we will apply the plain and ordinary meaning of the terms and enforce the contract according to its terms. *Claire's Boutiques, Inc. v. Brownsburg Station Partners LLC*, 997 N.E.2d 1093, 1098 (Ind. Ct. App. 2013). If necessary, the text of a disputed provision may be understood by referring to other provisions within the four corners of the document. *Id.* The four corners rule states that where the language of a contract is unambiguous, the parties' intent is to be determined by reviewing the language contained within the "four corners" of the contract, and "parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence." *Adams v. Reinaker*, 808 N.E.2d 192, 196 (Ind. Ct. App. 2004).

*John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014).

[13]     As an initial matter, we agree with Turner that the Third Contract applies, at least as far as it goes. Like the previous two versions of the contract, the Third Contract provides, in part, that "[t]his Agreement supersedes and all [*sic*] previous agreements, either oral or in writing, between the parties hereto with respect to the subject matter of this Agreement." Ex. Vol. IV p. 32. This is clear and means that the first and second agreements between Turner and KLS may as well have never existed as soon as the Third Contract was executed.[1]

[14]     Having established that the Third Contract governs, we address the rationale underlying the trial court's judgment. While the trial court concluded that no meeting of the minds had occurred between KLS and Turner and relied on principles of unjust enrichment, the trial court also seems to have concluded (in the alternative) that the Third Contract, while not necessarily ambiguous, did not represent the entirety of the agreement between the parties, thereby justifying the consideration of parol evidence to work out the actual and complete terms of the agreement. While we disagree with the trial court's

---

[1] To the extent that KLS argues that "only one document was signed by both appellant and appellee[,]" *i.e.*, the first version of the contract, we are not persuaded that this is significant. Appellee's Br. p. 4. While a signature frequently indicates and party's assent to the terms of a contract, there is nothing magical about signatures:

> The validity of a contract is not dependent upon the signature of the parties, unless such is made a condition of the agreement. 6 I.L.E. Contracts Sec. 53 (1958); *see Parrish v. Terre Haute Savings Bank*, (1982) Ind. App., 431 N.E.2d 132; *Seco Chemicals, Inc. v. Stewart*, (1976) 169 Ind. App. 624, 349 N.E.2d 733. […] However, some form of assent to the terms is necessary. *See generally Hess v. Lackey*, (1921) 191 Ind. 107, 132 N.E. 257. Assent may be expressed by acts which manifest acceptance. *Herald Telephone v. Fatouros*, (1982) Ind. App., 431 N.E.2d 171.

*State v. Daily Exp., Inc.*, 465 N.E.2d 764, 767 (Ind. Ct. App. 1984). Shepherd conceded during his trial testimony that he had initialed the Third Contract after the final alterations had been made, which, under the circumstances, was sufficient to indicate assent.

conclusion that no meeting of the minds occurred, we do agree that its reliance of parol evidence was appropriate in this case.

[15] Parol evidence may be used to fill in the gaps in cases where the written contract does not clearly indicate that it embodies the entire agreement between the parties.

> [T]he parol evidence rule recited in Corbin on Contracts, Sec. 573, restated in 13 I.L.E. Evidence § 181, […] reads as follows:
>
>> "When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing."
>
> However the rule does not apply when the writing shows upon its face that it does not embrace the entire contract, and additional facts are necessary to show its nature and extent. *Burton v. Morrow*, (1892) 133 Ind. 221, 32 N.E. 921; 13 I.L.E. Evidence § 185.
>
> Continuing the reading of Corbin on Contracts, (One Volume Edition 1952) Sec. 573, pp. 535–537, […] we find that:
>
>> "Whether any specific written document has been assented to by the parties as the complete and accurate 'integration' of the terms of their contract is an ordinary question of fact. In determining this question, no relevant evidence is excluded on the mere ground that it is offered in the form of oral testimony.
>>
>> In innumerable cases, only a part of the terms of an agreement are reduced to writing; and the writing is not assented to as accurate and complete. This is often a

difficult question of fact; in other cases there is no substantial dispute. It is upon the determination of this issue that the correctness of decisions giving or refusing effect to additional promises, warranties, and conditions must depend. Many documents, executed in the course of performance of an agreement, are not intended by either party as complete expressions of the terms of that agreement.

[T]he 'parol evidence rule' does not […] apply if a *contract has been made and a writing has been signed but has not been assented to as the complete and accurate 'integration.'"*
(Emphasis added.)

*Citizens Progress Co. v. James O. Held & Co.*, 438 N.E.2d 1016, 1021 (Ind. Ct. App. 1982) (emphasis in original). As mentioned, the Third Contract does not contain an integration clause clearly indicating that the contract embodies the entire agreement between the parties. Consequently, the trial court was permitted to receive and evaluate parol evidence to determine if the parties intended the Third Contract to be the complete agreement and, if not, the nature of the additional terms.

[16] We conclude that the record supports the trial court's finding that the actual agreement between the parties was for the House to be constructed on a cost-plus basis, with Turner's final obligation being KLS's actual costs plus ten percent. The parol evidence includes Shepherd's testimony tending to establish that this was the intent of the parties from the beginning:

[W]hen I sit down with customers and we talk about doing the costs plus 10% you still want to give them an estimated number to try to stick with because that's where they wanted to be at. So we do a flat number that gives us a range that he knows where or the

customer knows where they've got stay at to stay in their price range.

Tr. Vol. II p. 29. Shepherd clarified that this "flat number" put into his cost-plus contracts is not a "hard number" but, rather, an "estimate." Tr. Vol. II p. 29. The parol evidence also includes Shepherd's testimonial affirmation that he had "clearly and repeatedly communicated to Mr. Turner that the cost of the home would be it's [*sic*] actual costs as expended plus 10%[.]" Tr. Vol. II p. 127. When asked how often he had discussed with Turner the fact that the arrangement was to build the House for costs plus ten percent, Shepherd replied that it had been "[i]f not every week [then] every other week when we met on site and was talking about bills and this and that[.]" Tr. Vol. II p. 126. Shepherd testified that that he had never agreed with Turner to "waive [his] intention to recover the total costs for the home[.]" Tr. Vol. II p. 125.

[17] Evidence regarding the parties' conduct is consistent with this understanding. Shepherd testified that invoices for work to be performed by subcontractors or materials had been provided to Turner on an "ongoing or rolling basis" and that Turner had never questioned any of them or asked Shepherd what they were for. Tr. Vol. II p. 122. Shepherd testified that Turner had never said anything when costs had exceeded $180,000.00, asked KLS to stop work, or asked KLS to explore lower-cost materials. One may reasonably infer from Turner's actions that he approved of expenditures exceeding $180,000.00. We conclude that this evidence is sufficient to establish that the actual contractual agreement between Turner and KLS was—and had always been understood by both parties to be—that Turner would be obligated to pay KLS an amount

equal to KLS's costs plus ten percent of those costs. Turner's failure to pay KLS for the actual costs of constructing the House was a breach of that contract. Consequently, we affirm the trial court's judgment in favor of KLS in the amount of $66,388.76.

[18] We affirm the judgment of the trial court.

Bailey, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Julie A. Camden
Camden & Meridew, P.C.
Fishers, Indiana

ATTORNEY FOR APPELLEE

Briane M. House
Pritzke & Davis, LLP
Greenfield, Indiana