CITIZENS GAS & COKE UTILITY *v.* SETH WELLS ET UX.

[No. 1270A199. Filed November 24, 1971.]

*Patrick J. Smith, James R. McClarnon, Smith Morgan & Ryan,* of counsel, all of Indianapolis, for appellant.

*Joseph F. Quill, John G. McNutt,* of Indianapolis, for appellees.

SULLIVAN, P. J.—According to the complaint of the appellees-plaintiffs, Seth and Sarah Wells, the appellant-defendant, Citizens Gas & Coke Utility, negligently shut off gas service to their vacant Indianapolis rental building during September of 1968, causing extensive damage during the winter due to frozen and bursting pipes. The damage was first discovered in January of 1969 by Mr. Wells. The trial court, in awarding $8,000 damages to the appellees-plaintiffs (hereinafter called the Wells'), found that the utility had not given adequate notice to the Wells' of the necessity for entrance to the premises in keeping with its mandatory obligation to either test the gas meter or discontinue service.

Rule 11 of the rules and regulations promulgated by the Public Service Commission requires that:

"No public utility shall allow a gas meter to remain in service for a period of longer than ten years without checking it for accuracy and readjusting it if found to be incorrect. . . ."

In compliance with Rule 11, Citizens Gas developed a rigid procedure for informing customers of the need for testing[1] and for gaining access to all gas outlets.[2]

Early in 1968 the Wells' property was scheduled by computer for the 10-year meter test. The property itself consisted of a restaurant, which had not been rented since 1965, and two second-floor apartments, at least one of which had been rented during part of 1968 but which was vacant on the date the gas was shut off. The gas meter for the building was located in the basement and was accessible only through the restaurant. For purposes of reading the meter a key to the restaurant was in possession of the utility; keys were not, however, available to the apartments.

According to the testimony of Citizens Gas employees, the normal procedure for notification of a customer was followed and the gas service to the Wells' property was turned off only after all attempts at notification failed. In support of its

---

1. This procedure has been paraphrased as follows:

Servicemen were to visit the premises and, if unable to gain access, were to leave brightly colored tags on front and rear doors informing the customer of the reason for the visit and requesting the customer to call to make arrangements for completion of the test. If the customer did not call, then a supervisor of the utility was to attempt to contact the customer by telephone on two separate evenings to arrange for the test. If no contact was made, then a regular first-class letter with a self-addressed and stamped reply card was to be sent to the premises address requesting that the customer call the utility at a stated number. If no reply to the first letter was received within 14 days, then a certified letter with a reply date of 21 days thereafter was to be sent. If the certified letter was returned unclaimed by the post office, the current billing register was to be checked to verify the customer's name and mailing address, corrections made if any were necessary, and the certified letter resent. If no reply was received to the original or the corrected certified letter within the 21-day period, the servicemen were to make a final visit to the premises to attempt to gain admittance, and upon failure to do so were to turn off the gas at the curb and leave brightly colored tags on front and back doors advising of the action taken.

2. As a practical matter all gas fixtures in a building in which a gas meter is to be checked must be accessible to the serviceman in order that they can be relighted after the various tests have been performed.

action, Citizens Gas relies upon its internal rules numbered 8 and 9, as follows:

### 8. LIABILITY

\* \* \* \*

"The Utility shall have the right at all reasonable hours to enter the premises of the Customer for the purpose of making such inspection of the Customer's installation as is necessary for the proper rendering of service and application of the Utility's rates, rules and regulations; the right of installing, removing, testing, replacing or otherwise disposing of its property; the right of reading meters; and the right of entire removal of the Utility's property within a reasonable period of time, but not less than forty-eight (48) hours, in the event of termination of gas service for any cause."

### 9. DISCONTINUANCE OF SERVICE

"The Utility may discontinue its service to the Customer for any one of the following reasons:

"*After three (3) days' notice in writing*

(a) A violation of its Rules and Regulations."

\* \* \* \*

Such rules are binding upon customers of the utility. See *Portland Natural Gas and Oil Company* v. *State, ex rel. Keen* (1893) 135 Ind. 54, 34 N. E. 818.

The primary issues presented are whether notice before disruption of service need be express; whether the notice given by Citizens Gas to the Wells' was sufficient; and whether the trial court's findings correctly reflect the law of Indiana regarding notice. Minor issues involve contributory negligence on the part of the customer and the doctrine of avoidable consequences.

### *RIGHT OF UTILITY TO DISCONTINUE SERVICE UPON PROPER NOTICE TO CUSTOMER*

It is unquestioned that a utility can adopt reasonable rules and regulations governing its relationship with the

customer and the service provided. *Richmond Nat. Gas Co.* v. *Clawson* (1900) 155 Ind. 659, 58 N. E. 1049. Failure by the customer to comply with such rules and regulations constitutes proper grounds for discontinuance of service. *Greenfield Gas Co.* v. *Trees* (1905) 165 Ind. 209, 75 N. E. 2; *Irvin* v. *Rushville, etc., Tel. Co.* (1903) 161 Ind. 524, 69 N. E. 258.

In accordance with due process principles the Public Service Commission of Indiana, in Rule 20 of its *Rules and Standards of Service for the Gas Public Utilities of Indiana,* has required that notice of pending discontinuance of service must be actual:

"(a) Action by Public Utility. No public utility shall discontinue the service of any customer for violation of any rule or regulation of such utility or nonpayment of bills, except on written notice of at least three (3) days, mailed to such customer  at his address, as shown upon the public utility's records, or personally delivered to him or a member of his household, advising the customer in what particular such rule has been violated for which service will be discontinued if the violation is permitted to continue. . . ."

Contrary to the appellees' contention, there is no requirement that actual notice be express. It may be *either* express *or* implied. As stated in *Mishawaka St. Joseph L. & T. Co.* v. *Neu* (1935) 209 Ind. 433, 442, 196 N. E. 85, 89:

". . . [A]ctual notice has been divided into two classes, (1) express and (2) implied, which is inferred from the fact that the person charged had means of knowledge which he did not use."

Whatever its form, notice given by utilities to customers regarding property rights will meet due process requirements only where it is "sufficient." In *Mishawaka St. Joseph L. & T. Co.* v. *Neu, supra,* our Supreme Court defined sufficient notice as follows:

" 'Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with ██ all the facts which, by a proper inquiry, he might have ascertained.' " 209 Ind. 433, 442.

The principle last above quoted is perhaps placed in perspective by the following excerpts from 2 Pomeroy's Equity Jurisprudence (5th ed.), Sec. 596, *et seq.*:

"That the party has knowledge or information of facts sufficient to put him upon an inquiry has often been treated as peculiarly the characteristic of constructive notice. In truth, however, this test is equally applicable to every instance of actual notice inferred by process of rational deduction from circumstantial evidence.

\* \* \* \*

"The court or jury infers from the facts proved, by a process of rational deduction, *but without the aid of any legal presumption,* that such information was actually received." Sec. 596 at pages 613 and 615.

"This inference is not, in case of actual notice, a presumption, much less a conclusive presumption, of law; it may be defeated by proper evidence. If the party shows that he made the inquiry, and prosecuted it with reasonable diligence, but still failed to [make discovery], he thereby overcomes and destroys the inference. If, however, it appears that the party obtains knowledge or information of such facts, which are sufficient to put a prudent man upon inquiry, and which are of such a nature that the inquiry, *if prosecuted with reasonable diligence, would certainly lead to a discovery* . . . , then the inference that he acquired the information constituting actual notice is necessary and absolute; for this is only another mode of stating that the party was put upon inquiry; that he made the inquiry and arrived at the truth. Finally, if it appears that the party has knowledge or information of facts sufficient to put a prudent man upon inquiry, and that he wholly neglects to make any inquiry, or having begun it fails to prosecute it in a reasonable manner, then, also, the inference of actual notice is necessary and absolute." (Citations and footnotes omitted.) Sec. 597 at pages 619-620.

As a matter of law, the procedure adopted here by Citizens Gas for giving sufficient legal notice to customers appears

sound. Yet it is as a matter of fact that we are asked to appraise its merits in this case. This was done, and we think properly so, by the trial court.

A review of the evidence shows that Citizens Gas, in following its notice procedure, made repeated efforts to gain entrance to the Wells' rental property, but that the Wells' at no time during the testing year lived there. The Wells' correct mailing address was on file with Citizens Gas throughout that year but was not checked until the penultimate step in the procedure—when the certified letter was returned by the post office. Although witnesses testified that a certified letter was *probably* sent to the correct address in Carmel and that contact was *probably* made with the Wells' by telephone, no documentary evidence to either effect was presented due to an ill-advised policy of the utility which resulted in destruction of all records pertaining to a customer at the end of the test year. The Wells' staunchly deny receiving any manner of notice regarding the 10-year test.

We may look only to the evidence most favorable to the appellee, and the reasonable inference to be drawn therefrom, in adjudging its sufficiency. We are of the opinion that the trial court was within its prerogative in finding that Citizens Gas failed in fact to give adequate notice to the Wells' under the circumstances even though following a procedure designed to give proper notice.

### FINDINGS OF FACT NOT CLEARLY ERRONEOUS

The appellant further alleges that several findings of fact are clearly erroneous and do not support the conclusion of the court. Findings numbered 8, 12 and 20, all dealing with notice to the Wells', are set out as follows:

"8.    All mail for 463 North LaSalle Street was mailed to R. R. No. 1, Box 15, Carmel, Indiana, by the defendant by virtue of a change of address notice to the post office in 1967 and all bills and notices for the LaSalle Street property were sent to the Carmel address thereafter.
                    *    *    *    *

"12. [When the first registered letter was returned by the post office] [t]he Utility again looked in the files and found the address of plaintiff to be in Carmel; and testified that letters were mailed to plaintiffs at Carmel address; there was no response to either mail or telephone calls; after 21 days, the service was cut off at the sidewalk on September 13, 1968.

\* \* \* \*

"20. Plaintiffs never *received* any notice by mail or telephone calls or otherwise during the summer or fall of 1968 from the defendant. Plaintiff never saw a tag on the door of the building in September of 1968, or any other time and had no knowledge of the gas being turned off until he first observed the damage on January 8, 1969. The defendant had a key to the building at all times and plaintiffs never *received* a notice of any kind from the defendant that the service was being disconnected. . . . [A]ll bills from the defendant for services supplied to 463 North LaSalle Street were directed to their home at R. R. 1, Box 15, Carmel, Indiana." (Emphasis supplied)

Citizens Gas has taken the position that if the only fault in its notice procedure in this case was its failure to mail notices to Carmel, such defect was cured by the fact that those notices were delivered to Carmel by virtue of the Wells' change of address notice to the Post Office. This position, however, is abrasive to the due process requirements of sufficient notice as stated by Justice Jackson in the United States Supreme Court case of *Mullane* v. *Central Hanover Tr. Co.* (1949), 339 U. S. 306, 314:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice *reasonably calculated*, under all the circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Emphasis supplied)

Justice Jackson then emphasized:

"The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended

on the ground that it is in itself reasonably certain to inform those affected...." 339 U. S. 306, 315.

It seems clear that mailed notice which is wrongly addressed, and which must depend upon an alert postal employee for correction and rerouting, is not reasonably calculated or certain to inform affected parties. The selection of the manner of notice is wholly the prerogative of the one required to give it, and it is his obligation to adopt a means of conveyance which is reasonably certain to inform the party due such notice. The mailing of notice has been accepted as a substitute for personal delivery because of the reliability of the postal service. Yet the reliability of this procedure is based on the proven mechanics of mail delivery. Its use as a reasonably calculated means of giving notice still presumes that such notice has been properly stamped and addressed at the moment of mailing. The failure of Citizens Gas to correctly address its notices to the Wells' under the circumstances of this case simply cannot meet the due process requirements stated in *Mullane, supra,* no matter what remedial actions, short of providing express notice, are taken by the Post Office.

The appellant, citing *Cullinane* v. *Potomac Electric Power Company* (D. C. 1959), 147 A. 2d 768, further contends that the findings of the trial court judge indicate that the judge erroneously believed the law of Indiana to be that the customer must actually receive notice of a rule violation. While such interpretation could be made of Findings numbered 8, 12 and 20, *supra,* other interpretations must be admitted as at least as plausible. As found in Trial Rule 52(A), *Rules of Civil Procedure:*

"On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

In 3 Harvey, Ind. Practice 427, the author recites the "clearly erroneous" test to be applied to such finidngs:

> "The United States Supreme Court has held that a finding is clearly erroneous, 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' U. S. v. U. S. Gypsum Co. 1948, 333 U. S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed. 746, rehearing denied, 333 U. S. 869, 68 S. Ct. 788, 92 L. Ed. 1147."

We are not convinced upon review of the evidence here that the trial court was clearly in error in his findings or that he was in error as to the notice required in this case. He finds that notice was not in fact received by the Wells' but not that physical receipt of notice was required.

## NEITHER CONTRIBUTORY NEGLIGENCE NOR AVOIDABLE CONSEQUENCES DOCTRINES APPLICABLE IN THIS CASE

Citizens Gas finally contends that the Wells' were contributorily negligent in not visiting their property during the summer and fall of 1968, and also that if they had visited the property after the gas was shut off they could have avoided the consequences of the utility's act. Appellant would thus have us hold a customer negligent for not anticipating a decennial test which was wholly dependent upon the internal procedure of the utility. Not only did the customer not have notice of the utility's intentions that year, the utility itself at all times possessed the correct mailing address and telephone number of the customer. While an owner of property concededly is charged with a duty of reasonable care to prevent injury or to avoid or minimize threatened danger, there was no breach of such duty in this case. The customer, although *in absentia* from his rental property, did all that was requested of him by the utility concerning his gas service— he provided a correct billing address, adequate deposit, timely payment of bills, and a key to the restaurant.

In summary, a misapplication here of an otherwise reasonable notice procedure was coupled with the ill-advised company policy of destroying all records promptly at the end of the testing year. It is for the reasons stated above that the judgment of the trial court is affirmed.

Buchanan, Lowdermilk, and Robertson, JJ., concur.

NOTE—Reported in 275 N. E. 2d 323.