AMERICAN FAMILY MUTUAL INSURANCE COMPANY *v.* WILLIAM J. BENTLEY.

[No. 2-774A174. Filed August 19, 1976.]

*Kent H. Musser, McDonald & Musser,* of Indianapolis, for appellant.

*Phillip R. Smith, Milo G. Gray, Jr., Kitley, Schreckengast & Davis,* of Beech Grove, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J.—The instant case was transferred from the Second District to this office on July 20, 1976, in order to lessen the disparity in caseloads between the Districts.

The American Family Mutual Insurance Company, plaintiff-appellant (American) brought suit for a declaratory judgment against their assured William J. Bentley, defendant-appellee (Bentley) and the Indiana Insurance Company (Indiana) praying that the rights of American and Bentley under an insurance policy sold Bentley by American be fixed, determined and declared. After a bench trial a judgment was. entered for Bentley and American appeals.

We affirm.

## FACTS

American had issued a homeowners insurance policy to Bentley which was in effect on June 10, 1970.

A building on Bentley's lot had been converted from a henhouse to a storage place and garage. Prior to June 10, 1970, Boy Scout Troop No. 184 rented a small portion of the structure for storage of a trailer, three aluminum canoes and other camping equipment.

Bentley informed the Scout officials he did not have insurance that would cover their property. Scout Troop No. 184 then insured their equipment on storage with the Indiana Insurance Company. Bentley did not make a storage charge but they insisted on paying him $15.00 for the use of the building for as long as they wanted it as they could remove and replace their stored equipment at any time. They had paid $45.00 per year storage at the State Fairgrounds and there could not remove or replace their equipment throughout the winter months.

On the morning of June 10, 1970, this building was discovered to be on fire and was completely destroyed with all its contents, including the equipment of Troop No. 184. After the fire Indiana paid the Boy Scouts for their loss and American paid Bentley for his loss of personal property destroyed by fire and demand was made of Bentley by Indiana Insurance Company for reimbursement.

Bentley notified American of this demand prior to the filing of Indiana's law suit and prior to the time he was required to file a responsive pleading thereto. American then informed Bentley the property in question was not covered by its policy and it was not liable for the loss thereto and had no duty to defend.

At trial a copy of the policy issued by American to Bentley was stipulated into the record and pertinent parts thereof pertaining to coverage and exclusions afforded thereby are as follows, to-wit:

"SECTION I—COVERAGE B
Unscheduled Personal Property
This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling and owned or used by an insured, while on the described premises and, at the option of the named insured, owned by others while on the portion of the premises occupied exclusively by the insured."

"SECTION II—COVERAGE D
Comprehensive Personal Liability Coverage
The company shall pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence."

"EXCLUSIONS—SECTION II
This section does not apply:
Under any of the coverages,

a. To any business pursuits of an insured, except activities therein which are ordinarily incident to non-business pursuits. . . .

j. to property damage to property used by, rented to or in the care, custody or control of any insured or property as to which the insured for any purpose is exercising physical control. . . ."

## ISSUES

The issues relied upon for appeal are:

Did the trial court commit reversible error—

1.  In ruling the property of a third party (Troop No. 184) was not in the care, custody or control of Bentley and Bentley did not exercise physical control over said property.

2.  In ruling that Bentley's activity in providing Troop No. 184 with storage space for which remuneration was paid did not constitute a business pursuit as excluded from coverage under American's policy, and

3.  In ruling that American had extended coverage for this loss and therefore had a duty to defend Bentley, pay any judgment taken against him and provide or pay legal counsel fees necessary for his defense.

## DISCUSSION AND DECISION

ISSUE ONE:

First, it is necessary to examine the findings and judgment of the trial court which are in the words and figures as follows, to-wit:

"This cause came on for trial on the 7th day of February, 1974. Plaintiff appeared by counsel. Defendant William J. Bentley appeared in person and by counsel. And the Court having heard the evidence, having considered the briefs filed by counsel for the parties and having had the matter under advisement, now finds:

1.  That on the 20th day of May, 1970, the plaintiff did issue a certain policy of insurance to the defendant-cross complainant Bentley, and that said policy was in full force and effect on the 10th day of June, 1970.

2.  That on the 10th day of June, 1970, a fire occurred in a building located on defendant Bentley's real estate which resulted in damage to a building and certain personal property, namely: three canoes, a trailer and camping equipment, owned by a third party which was stored therein. The defendant Bentley did receive compensation for the storage of said property.

3.  That said third party was insured by the defendant, Indiana Insurance Company, and said defendant did compensate its insured for said damage and loss pursuant to the terms of its policy as issued to said third party. That the defendant, Indiana Insurance Company, as subrogee under its policy, then filed suit against the defendant Bent-

ley. The plaintiff has refused to defend the defendant Bentley in said suit and has denied that its policy extends any type of coverage to defendant Bentley in so far as the damage to the property of the third party is concerned.

4. That defendant Bentley has incurred expenses of $787.00 in the defense of the suit filed against him by the defendant, Indiana Insurance Company.

5. Plaintiff's policy issued to the defendant contains the following provisions:

'SECTION I—COVERAGE B

Unscheduled Personal Property

This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling and owned or used by an insured, while on the described premises and, at the option of the named insured, owned by others while on the portion of the premises occupied exclusively by the insured.'

That the personal property owned by the third party was not incidental to the occupancy of the defendant Bentley's premises, and therefore, said coverage does not apply to the damage and resulting loss of the third party's property, and no coverage is afforded the defendant Bentley under this provision of plaintiff's policy.

6. Plaintiff's insurance policy provides in part as follows:

'SECTION II—COVERAGE D

Comprehensive Personal Liability

The company shall pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence.'

Said policy further provides as follows:

'Exclusions. Section II

This section does not apply to Coverage D:

  j. to property damage to property used by, rented to or in the care, custody or control of any insured or property as to which the insured for any purpose is exercising physical control, except this exclusion shall not apply to liability which would be imposed upon the insured by common or statutory law in the absence of agreement by the insured, for injury to

or destruction of residential premises or house furnishings resulting from (1) fire, (2) explosion, or (3) smoke or smudge caused by sudden, unusual and faulty operation of any heating or cooking unit;'

That the property of said third party was not in the care, custody or control of defendant Bentley, nor did said defendant exercise physical control over said property. That the plaintiff's insurance policy does provide property damage coverage to the defendant Bentley, and the plaintiff is obligated by the terms of its policy to defend him in the pending lawsuit filed by the defendant, Indiana Insurance Company, and is further bound to satisfy any judgment that might result therefrom.

7. That the defendant Bentley is entitled to recover the sum of Seven Hundred Eighty-Seven Dollars ($787.00) spent by him for the defense of said lawsuit.

It is, therefore, ORDERED, ADJUDGED AND DECREED that Judgment be for the defendant William J. Bentley, and against the plaintiff on Plaintiff's complaint; that the defendant Bentley is entitled to coverage and protection under plaintiff's policy, Section II, Coverage D, as to the claim asserted by the defendant, Indiana Insurance Company: that Judgment be for cross-complainant, William J. Bentley, and against the cross-defendant American Family Mutual Insurance Company for Seven Hundred Eighty-Seven Dollars ($787.00) and costs."

American urges that Section II, Exclusions under Coverage D (j), as above set out, excludes from coverage any third party property over which an insured has control, and further contends that the facts adduced in evidence were that the insured did have physical control of the property of the third party, Boy Scouts.

Bentley, in answer to American's argument, contends that the said policy provision relied upon by American does not apply as the "care, custody, or control" provision of the policy evidenced that Bentley had no control over the property of Boy Scouts and specifically permitted them access to their property at all times.

The parties agreed that the phrase "care, custody and control" is unambiguous and the words should be interpreted as

they are normally used. *O'Meara* v. *American States Insurance Company* (1971), 148 Ind. App. 563, 268 N.E.2d 109 at 111.

This court stated in *Physicians Mutual Insurance Company* v. *Savage* (1973), 156 Ind. App. 283, 296 N.E.2d 165 at 167, "The words in an insurance policy should be given their plain and ordinary meaning whenever possible."

Neither party has favored this court with any Indiana cases interpreting the phrase now under discussion. Courts of other jurisdictions have propounded general rules for the application of this type of exclusion clause in the context of contractors involved in construction work. See Annot., 62 A.L.R.2d 1242, § 4 (1958). However, the cases interpreting such clauses in other contexts are in conflict. For example, compare: *Employers Mutual Liability Ins. Co. of Wisconsin* v. *Puryear Wood Products Co.* (1969), 247 Ark. 673, 447 S.W.2d 139; *Falls Sheet Metal Works, Inc.* v. *United States Fidelity & Guaranty Co.* (1969), 17 Ohio App. 2d 209, 245 N.E.2d 733; *Hardware Mutual Casualty Co.* v. *Crafton* (1961), 233 Ark. 1020, 350 S.W.2d 506; *Rochester Woodcraft Shop, Inc.* v. *General Acci. Fire & Life Assur. Corp.* (1970), 35 A.D. 2d 186, 316 N.Y.S.2d 281 with: *Howard Associates, Inc.* v. *Home Indemnity Co.* (Colo. App. 1974), 528 P.2d 980; *Madden* v. *Vitamilk Dairy, Inc.* (1961), 59 Wash. 2d 237, 367 P. 2d 127; *New Hampshire Insurance Co.* v. *Abellera* (1972), 6 Wash. App. 650, 495 P.2d 668.

The common thread running through these opinions is the recognition that *application of such clauses depends on the facts of each case.*

The trial court here—after weighing conflicting evidence —found that the property of the third party (the Boy Scouts) was not in Bentley's care, custody or control.

We must accord the trial court due regard for its opportunity to evaluate the evidence and must uphold its findings

unless they are clearly erroneous. Ind. Rules of Procedure, Trial Rule 52 (A) and Appellate Rule 15 (N). We will hold a trial court's findings to be clearly erroneous only where—although there is evidence to support them—a review of the entire record leaves us with a definite and firm conviction that a mistake has been made. *Citizens Gas and Coke Utility* v. *Wells* (1971), 150 Ind. App. 78, 275 N.E.2d 323.

The conflicting evidence in this case leaves us with no such conviction.

ISSUE TWO:

American also contends that paragraph "a" of the exclusions set forth above applies in this case.

This provision excludes coverage of claims arising from the insured's "business pursuits." The policy defines "business" to include "the rental or holding for rental of the whole or any portion of the premises by any insured"; but the definition expressly excludes "the rental or holding for rental of a portion of the residence premises for private garage purposes."

The only case construing such an exclusion clause in an Indiana setting, *Gulf Insurance Co.* v. *Tilley* (N.D. Ind. 1967), 280 F.Supp 60, expressly declined to decide what conduct constitutes a business pursuit. Judge Eschbach in *Gulf Insurance* held that the claim in question arose from "an activity which was 'incident to non-business pursuits' . . ." so that the policy covered the claim even if the insured had been engaged in a business pursuit. 280 F.Supp. at 65.

As noted in *Gulf Insurance,* the general rule, which we hereby adopt in Indiana, is that an insured is engaged in a business pursuit only when he pursues a continued or regular activity for the purpose of earning a livelihood. See cases collected at 48 A.L.R.3d 1096, § 3 [a] (1973).

The record in this cause does not disclose that Bentley continually or regularly rented storage space to third persons. Nor does the record reveal that Bentley sought to store the property of others in order to earn a livelihood.

Therefore, we conclude that—under the general rule—the trial court's findings were not in error by omitting a finding that the claim in question arose out of a business pursuit of Bentley. TR. 52(A) ; AP. 15(N) ; *Citizens Gas and Coke Utility* v. *Wells, supra.*

American argues that the receipt by Bentley of remuneration for the storage of the Boy Scouts' property was by itself sufficient to create a business pursuit on his part. This is the minority position adopted in other jurisdictions. See 48 A.L.R.3d 1096 § 3[b], *supra.*

Applying, without adopting, the minority view that every activity in which profit is a motive constitutes a business pursuit, the trial court's findings cannot be set aside in that the evidence was conflicting as to whether profit was Bentley's motive in allowing the Boy Scouts to store their equipment on his property. TR. 52(A) ; AP. 15(N) ; *Citizens Gas and Coke Utility* v. *Wells, supra.*

In addition, Bentley argues that the storage in this case was for private garage purposes and therefore could not have been a "business" under the terms of the policy (see definition, *supra*).

In considering this contention, the record again leaves us with no definite and firm conviction that the trial court erred and we are therefore bound to uphold its findings. TR. 52(A) ; AP. 15(N) ; *Citizens Gas and Coke Utility* v. *Wells, supra.*

ISSUE THREE:

The final portion of the central question which must be examined is whether the insurance company was required to defend the insured if the policy applied. Having determined that the two provisions tendered by American did not exclude from coverage the particu-

lar acts which occurred in this case, we now hold that, pursuant to the general coverages provision, American was required to defend Bentley, to pay any judgment taken against him and provide or pay legal counsel for necessary expense in the suit filed against him by the Boy Scouts' insurer, Indiana Insurance Company.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 352 N.E.2d 860.