Dean ASBURY and Paula Asbury,
Plaintiffs-Appellants,

v.

INDIANA UNION MUTUAL
INSURANCE COMPANY,
Defendant-Appellee.

No. 1-282A51.

Court of Appeals of Indiana,
First District.

Oct. 26, 1982.

Harry A. Siamas, Crawfordsville, for plaintiffs-appellants.

Thomas A. Withrow, Blair R. Vandivier, Henderson, Daily, Withrow, Johnson & Gross, Indianapolis, Richard G. Tulley, Berry, Capper & Tulley, Crawfordsville, for defendant-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiffs-appellants Dean Asbury and Paula Asbury (Asburys) appeal an order of the Montgomery Circuit Court granting defendant-appellee Indiana Union Mutual Insurance Company's (IUMI) motion for summary judgment in an insurance contract action for recovery for breach of contract where the trial court determined that the loss was not covered under a business property exclusion provision in the Asburys' homeowners policy.

We reverse.

## STATEMENT OF THE FACTS

The material in favor of the non-moving parties, the Asburys, discloses that on May 14, 1980, they applied for a policy of insurance with IUMI to cover their personal property and home; such an insurance contract is commonly called a homeowners policy.

Mr. Asbury has been employed as a mill operator at Prowler Industries in Crawfordsville, Indiana, since 1976, and Mrs. Asbury works as a medical assistant. Since he was a child, Mr. Asbury has hunted for sport. He hunts with several trained coon dogs which he owns and keeps for the purpose of hunting. He has participated in many sporting contests, using his coon dogs to hunt raccoons, and he has won several trophies over the years for the performance of his coon dogs.

During the Fall of 1980, Mr. Asbury hunted and killed approximately 117 raccoons and 11 foxes; he skinned the animals and stored the pelts in a deep freeze located in a barn on his premises. Sometime in December of 1980, the locks on the barn and freezer were broken and the animal pelts, having an approximate value of $3,500, were stolen. Subsequently, the Asburys properly filed a claim of loss with IUMI, which rejected their loss, claiming the animal skins were not covered under their homeowners policy because they represented "business property" which was excluded from coverage under the policy. The exclusionary clause reads as follows:

"Property Not Covered. We do not cover:

\* \* \* \* \* \*

9. business property in storage or held as a sample or for sale or delivery after sale[.]"

The policy also defined "business" as follows: "includes trade, profession or occupation."

In 1977, Mr. Asbury received approximately $1,500 from the sale of animal skins from his annual Fall hunt. Similarly, in 1978 and 1979, he received approximately $2,500 and $4,100 respectively from the sale of animal skins. Mr. Asbury never relied on the sale of animal skins to make his living, and he never bought or sold animal skins as a trade, profession or occupation. Furthermore, Mr. Asbury was not a licensed animal fur dealer, and therefore, was required to sell or dispose of his coon and fox skins before a certain date each year.

Under Section 1 of "Coverages," the category "Special Limits of Liability" limited liability to $500 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

Following IUMI's denial of liability, the Asburys filed their cause of action for breach of an insurance contract on February 20, 1981. IUMI filed a motion to dismiss, asserting that the Asburys' stolen property was business property, and thus was excluded by the terms of the policy. The trial court denied IUMI's motion to dismiss finding that "there is a specific

question of fact to be resolved by the trier of fact as to whether or not the coon and fox skins and furs stolen from plaintiffs' residence were, in fact, business property within the definition of business property in the contract of insurance. . . ." Thereafter, IUMI filed a motion for summary judgment, and, after both sides filed additional memoranda, answers to interrogatories, and affidavits, the trial court granted summary judgment in favor of IUMI. In a lengthy order supporting the judgment, the trial court found, *inter alia* that: 1) Dean Asbury had received money from the sale of skins in the past; 2) Dean Asbury stored the skins which were stolen in his freezer for sale at a later time; 3) the natural reading of "business" in the insurance contract would include a part-time trade, profession or occupation; 4) Dean Asbury hunted for sport as a hobby, but the use to which he put the skins was business, that is an occupation or employment habitually entered into for livelihood or gain; and 5) the loss suffered by the Asburys was of purely business property in storage and held for sale.

## ISSUES

Restated, the Asburys present the following arguments for review:

I. Whether the trial court erred in finding as a matter of law that the insurance contract was not ambiguous and the Asburys were engaged in the profession, occupation and business of selling animal furs; and

II. Whether the trial court erred in granting summary judgment in favor of IUMI as there were material issues of fact.

## DISCUSSION AND DECISION

The Asburys contend that the insurance policy was ambiguous in several respects. One, it defined "business" as a trade, profession or occupation, but, in excluding "business property" from coverage, the insurance contract failed to define "business property." The Asburys thought "business property" only referred to property from their employment. Two, the insurance policy, under a special limit on liability, insured against loss of furs by theft to $500. The Asburys argue they reasonably could believe the animal furs were covered under that clause to the extent of $500. For these reasons, the Asburys argue that whether they were engaged in the business of selling animal skins and the stolen skins were "business property" are material issues of fact that a jury must decide. The facts and inferences therefrom must be weighed by the trier of fact and not by the court in a summary disposition.

▆ Summary judgment may be granted only if all the material on file shows that there was no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Carrell v. Ellingwood,* (1981) Ind.App., 423 N.E.2d 630. It cannot and should not be used as an abbreviated trial. *Podgorny v. Great Central Insurance Company,* (1974) 160 Ind.App. 244, 311 N.E.2d 640. The trial judge may *not* weigh the evidence in a summary judgment proceeding. Even where the facts are undisputed, the ability to draw from them conflicting inferences which alter the outcome, will make summary judgment inappropriate. *Carrell, supra.* In reviewing the propriety of a summary judgment, the facts alleged by the party opposing the motion must be taken as true. *Boswell v. Lyon,* (1980) Ind.App., 401 N.E.2d 735. Even if the trial judge believes the proponent of the motion will prevail at trial, or where he believes the likelihood of recovery is improbable, such are not bases for summary judgment. *Carrell, supra.*

IUMI rejects the Asburys' appeal, contending that it fails to comply with Ind. Rules of Procedure, Trial Rule 59(D)(2) since the Asburys only generally discussed in their motion to correct errors that the insurance policy was ambiguous, rather than specifically setting forth the particular ambiguities, as the rule contemplates. We disagree. In their motion to correct errors the Asburys raised the following specific errors: 1) the jury should decide whether the stolen property was "business property"

by the terms of the insurance policy; 3) the trial court has rewritten the insurance contract by supplying its own definition of "business property;" and 4) the special limits of liability section provides coverage of $500.00 on furs, creating another ambiguity in the policy when read with the business property exclusion provision.

■ Although some of the language in the Asburys' motion to correct errors is generally phrased, they have substantially complied with the rules and have sufficiently raised and discussed the ambiguous terms and provisions in the insurance contract. *See, Hudson v. Tyson,* (1980) Ind.App., 404 N.E.2d 636; *Matter of Geake,* (1980) Ind. App., 398 N.E.2d 1375. Thus, the issues have not been waived on appeal.

■ IUMI also assails the Asburys' brief as deficient for lack of citations of authority as required by Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). Again, we disagree. In addition to setting forth, with supporting authorities, the proper standard for reviewing a summary judgment, the Asburys have cited cases on the interpretation and construction of insurance provisions and any ambiguities attendant thereto. While it is true the Asburys have not provided us with an analysis of the case law and review articles on the key issue, the business property exclusion provision in homeowners policies, they have presented sufficient authority with pertinent argument so as not to waive the issue.

■ Turning to the issue before us, we first note that an insurance policy is a contract between the insurer and the insured, and, as such, the law of contracts controls their legal relationship. *American Economy Insurance Company v. Liggett,* (1981) Ind.App., 426 N.E.2d 136. We must ascertain and enforce the parties' intent as manifested in the insurance contract. *Stockberger v. Meridian Mutual Insurance Company,* (1979) Ind.App., 395 N.E.2d 1272. Words in an insurance policy should be given their plain and ordinary meaning whenever possible. *Physicians Mutual Insurance Company v. Savage,* (1973) 156 Ind.App.

283, 296 N.E.2d 165. As Judge Staton recited in his concurring opinion in *Liggett:*

> " 'An insurance contract is prepared and drafted solely by the insurance company subject to no real bargaining and, thus, is a contract of adhesion... Therefore, when a court is required to interpret an insurance contract, the ambiguities will be construed against the insurer and in favor of the insured... An insurance contract is ambiguous if reasonably intelligent men, upon reading the contract, would honestly differ as to its meaning....' (citations omitted)

*Travelers Indemnity Co. v. Armstrong* (1979), Ind.App., 384 N.E.2d 607, 613 (transfer pending).

An insurance contract must be construed to prevent the defeat of the insured's indemnification for a loss when the general language of the contract is susceptible to two equally fair constructions. *Freeman v. Commonwealth Life Insurance Co. of Louisville* (1971), 149 Ind.App. 211, 217, n. 6, 271 N.E.2d 177, 181, n. 6, *transfer denied* (1972), 259 Ind. 237, 286 N.E.2d 396; *Richmond Insurance Co. of New York v. Boetticher* (1938), 105 Ind.App. 558, 562, 12 N.E.2d 1005, 1007. An exclusion in an insurance contract will be given effect only if it clearly and unmistakably brings within its scope the particular act or omission that will effectuate the provision. *Huntington Mutual Insurance Co. v. Walker* (1979), Ind.App., 392 N.E.2d 1182, 1185; *American States Insurance Co. v. Aetna Life & Casualty Co., supra* [Ind.App.], 379 N.E.2d [510] at 516–17. An insurer may limit its liability for a particular act or omission so long as the exclusion is plainly expressed in the insurance contract and it does not contravene statutory authority or public policy. *Cincinnati Insurance Co. v. Mallon, supra* [Ind.App.] 409 N.E.2d [1100] at 1103." 426 N.E.2d at 146. Unless it is clear from the language of the policy, an insurance contract should not be interpreted to remove from coverage a risk against which an insured intended to protect himself. *American States Insurance Co. v. Aetna Life &*

*Casualty Company,* (1978) Ind.App., 379 N.E.2d 510.

In the case at bar, the insurance policy excludes from coverage business property held in storage. Under the policy, the definition of "business" includes trade, profession or occupation. Upon noting that the language employed in an insurance policy must be accorded the connotation which a policyholder of ordinary intelligence would usually attach to it, the court, in *Home Insurance Company v. Aurigemma,* (1965) 45 Misc.2d 875, 257 N.Y.S.2d 980, referred to the Webster's Third New International Dictionary, Unabridged, to define "business" as follows:

"The meaning of the term 'business pursuit' as used by plaintiff in its exclusionary clause must be viewed in the light of the understanding of the ordinary insured, if unambiguous, or, if otherwise, to be construed against the insurer who prepared the form and created the wording.

Webster's Third New International Dictionary, Unabridged, defines the 'key words' in the subject policy as follows:

'*Business.* a commercial or mercantile activity customarily engaged in as a means of livelihood.'

'*Pursuit.* an activity that one pursues or engages in seriously and continually or frequently as a vocation or profession.'

'*Trade.* the business one practices or the work in which one engages regularly; one's calling: gainful employment: means of livelihood.'

'*Profession.* a calling requiring specialized knowledge and often requiring long and extensive preparation including instructions in skills and methods.'

'*Occupation.* that which principally takes up one's time, thought and energies, especially one's regular business or employment, also whatever one follows as the means of making a livelihood.'

Finally, among lay dictionaries, Oxford Universal Dictionary, Third Edition (Rev.) defines these terms as follows:

'*Business.* Stated occupation, profession or trade * * * trade, commercial transaction or engagement * * *'

'*Pursuit.* * * * the action of following or engaging in something, as a profession, business, recreation, etc., that which one engages or follows * * *'

From all of the aforesaid authorities it is clear that two elements are present in almost every definition, either expressly or by implication: *first, continuity, and secondly, the profit motive.* As to the first, there must be a 'customary engagement' or a 'stated occupation'; as to the latter, there must be shown to be such activity as a 'means of livelihood'; 'gainful employment'; 'means of earning a living'; 'procuring subsistence or profit'; 'commercial transactions or engagements'."

257 N.Y.S.2d at 985.

■■ Mr. Asbury did not consider hunting and skinning animals for sport his trade, profession or occupation. It was undisputed that he was employed as a mill operator at Prowler since 1976. We agree with the court in *Aurigemma* that a man's "profession" or "occupation" is his stated occupation by which he undertakes to earn a livelihood. In *Annot.* 48 A.L.R.3d 1098, 1099 (1972), a survey of the cases construing the construction and application of the business exclusion provision commonly found in homeowners policies, the following observation was made: "[a]s to what is an excluded 'business pursuit,' the courts have generally taken the restrictive view that this phrase denotes a continuous or regular activity for the purpose of earning a livelihood, such as a trade, profession, or occupation, or a commercial enterprise." (Footnote omitted.)

In the instant case, the exclusion provision, by its very language, contains no exception for activities which are ordinarily incident to non-business pursuits. Thus, what activities constitute "business" is even less clear to an average person who reads IUMI's policy than other policies which except "incidental activities" from the business exclusion.

Two predominant views emerge from the case law as to what constitutes "business" or "business pursuits" for purposes of an exclusionary clause in a homeowners policy. One line of decisions espouses the view that "business" means a continued or regular activity for the purpose of earning a livelihood, such as a trade, profession or occupation. *See Allied Mutual Casualty Company v. Askerud,* (1959) 254 Minn. 156, 94 N.W.2d 534; *O'Conner v. Safeco Ins. Co. of North America,* (1977) Fla.App., 352 So.2d 1244; *Southern Guaranty Insurance Company v. Duncan,* (1974) 131 Ga.App. 761, 206 S.E.2d 672; *Fadden v. Cambridge Mutual Fire Insurance Company,* (1966) 51 Misc.2d 858, 274 N.Y.S.2d 235, aff'd 27 A.D.2d 487, 280 N.Y. S.2d 209; and *Aurigemma, supra.*

The other view weighs more heavily upon the presence of a profit motive or monetary gain in the decision whether an activity falls within a business exclusion provision. *See Salerno v. Western Casualty & Surety Company,* (8th Cir. 1964) 336 F.2d 14; *Last v. West American Insurance Company,* (1976) 139 N.J.Super. 456, 354 A.2d 364; and *State Mutual Cyclone Insurance Co. v. Abbott,* (1974) 52 Mich.App. 103, 216 N.W.2d 606.

Our research has uncovered three Indiana cases, one a federal case, construing business exclusion clauses in homeowners policies: *Gulf Insurance Company v. Tilley,* (N.D.Ind.1967) 280 F.Supp. 60, aff'd (7th Cir. 1968) 393 F.2d 119; *American Family Mutual Insurance Company v. Bentley,* (1976) 170 Ind.App. 321, 352 N.E.2d 860; and *Automobile Underwriters, Inc. v. Hitch,* (1976) 169 Ind.App. 453, 349 N.E.2d 271.

In *Tilley,* the insurance policy had a business exclusion clause which contained an exception for activities ordinarily incident to non-business pursuits. The facts in *Tilley* are dissimilar to the case at bar and the court did not have to decide what conduct constitutes a "business pursuit" since the particular activity that gave rise to the lawsuit (an insured was sued as a result of a child, for whom the insured was babysitting, being burned by hot coffee) fell within an exception to the business exclusion.

However, in its discussion the court made the following observations as to what constitutes "professional service":

"The court rejects the contention, with respect to the policy exclusion contained in Special Exclusion paragraph (a)(2), that Mrs. Tilley's baby-sitting constituted a 'professional service' within the meaning of that policy term. *See Norways Sanatorium, Inc. v. Hartford Accident & Indemnity Co.,* 112 Ind.App. 241, 41 N.E.2d 823, 44 N.E.2d 192 (1942). The term 'professional service' is not modified or defined in the body of the policy, and, giving to the term its usual and ordinary meaning, cf. *Hoosier Mut. Automobile Insurance Co. v. Lanam,* 79 Ind.App. 629, 137 N.E. 626 (1923), this court holds that baby-sitting, under the circumstances of this case, is not a 'professional service' within the meaning of said policy. Mere employment, even though on a compensated basis, does not of itself render the person employed a 'professional' in that particular field. See, e.g., *Cummins v. Pennsylvania Fire Ins. Co.,* 153 Iowa 579, 134 N.W. 79 (1912). The term 'professional' would seem, rather, to imply the use or application of specialized skills or learning, and the record before this court is devoid of anything that would indicate that baby-sitting alone requires, or that Mrs. Tilley possessed, any special training or skill for that purpose."

280 F.Supp. at 63.

In *Bentley,* the court held that a provision in a homeowners policy excluding coverage for any "business pursuit" of an insured was not applicable where the insured had been renting for money storage space to third persons. The *Bentley* court found that an insured is engaged in a business pursuit only when he pursues a continued or regular activity for the purpose of earning a livelihood, and, at 352 N.E.2d 865, stated:

"As noted in *Gulf Insurance,* the general rule, which we hereby adopt in Indiana, is that an insured is engaged in a business pursuit only when he pursues a continued or regular activity for the purpose of earning a livelihood. See cases

collected at 48 A.L.R.3d 1096, § 3[a] (1973).

The record in this cause does not disclose that Bentley continually or regularly rented storage space to third persons. Nor does the record reveal that Bentley sought to store the property of others in order to earn a livelihood."

Thus, the court in *Bentley, supra,* held that the activity does not constitute a "business" unless the insured *regularly* and *continually* rents storage space to third persons for the purpose of earning a livelihood.

In *Hitch, supra,* the insured owned a gasoline service station in Greensburg, Indiana; in addition to his service station business, Mr. Hitch sold reloaded shotgun shells from both his personal residence and the gas station. The reloaded shells were boxed in "Federal" shotgun shell boxes and shelved behind the counter in the service station. A purchaser of the shells, who was injured when a shell malfunctioned and exploded, subsequently brought an action against Mr. Hitch. The trial court ruled that the insurance policies which contained a "business pursuits" exclusion provision covered the activity, holding that the sale of reloaded shotgun shells was incidental to the operation of Hitch's service station. The Court of Appeals, however, reversed, holding:

"The only reasonable interpretation of the garage liability policy in the present case, is that the sale of shotgun shells is not necessary or incidental to the use of the premises for the purpose of operating a garage. *See also: Davis v. Hartford Accident & Indemnity Company* (1965), 48 Misc.2d 135, 264 N.Y.S.2d 335; *Fidelity & Casualty Co. of New York v. Napaton Motor Sales, Inc.,* (1972), 5 Ill.App.3d 705, 284 N.E.2d 26.

\* \* \* \* \* \*

Since Hitch regularly reloaded the shells for later resale for profit to customers of his service station, this activity fell within the 'business pursuits' exclusion in the homeowners policy."

349 N.E.2d at 275. Under such facts, we also agree that the resale of shotgun shells can hardly be viewed, as the trial court found, as merely a hobby conducted for his personal pleasure and enjoyment. Mr. Hitch was selling these shells to his regular service station customers.

We conclude from our review of the Indiana cases that while each case is fact-sensitive for determining whether a particular activity is "business" or involves "business property," the controlling rule in Indiana is as pronounced in *Bentley,* that an insured is engaged in business only when he pursues a continued or regular activity for the purpose of earning a livelihood. The jury as the fact-finder must decide what constitutes a business and what property is "business property" where the insurance policy does not restrictively define the terms or exclusions. Courts cannot rewrite insurance contracts. *Cincinnati Insurance Company v. Mallon,* (1980) Ind.App., 409 N.E.2d 1100; and courts can only enforce the terms of an insurance policy as agreed upon. They have no authority to make a new or different contract. *Bell v. New York Life Insurance Company,* (1963) 134 Ind.App. 614, 190 N.E.2d 432.

In other jurisdictions we have found conflicting views on what constitutes "business" for purposes of determining whether coverage exists or not. In *Wiley v. Travelers Insurance Company,* (1974) Okl., 534 P.2d 1293, the Supreme Court of Oklahoma, in reversing both the trial court and the Court of Appeals, held that an insured homeowner who bred, raised and sold for profit St. Bernard puppies was engaged in a business pursuit under his homeowners policy which excluded "business pursuits" from coverage. However, in a well-reasoned dissent, Justice Barnes pointed out that the majority failed to consider the definitions contained in the policy, and stated:

"Mr. Geibe did not consider raising St. Bernard dogs to be his trade, business, or occupation. His sworn application for a homestead exemption for 1971 stated that no part of his property was used commercially. Also, for this property, Geibe never applied for a kennel permit, which would have been required if he kept more than four adult dogs on the

premises. On the day Mrs. Wiley was bitten, only three adult St. Bernard dogs and one litter of puppies were there.

It was undisputed that Mr. Geibe held a full-time job as a traveling salesman and earned in excess of $10,000.00 per year at that occupation.

If we apply any of the above-quoted commonly accepted definitions, we find that raising dogs was not policy-holder Geibe's principal calling, vocation or business. The definitions make no distinction on the basis of profit motive, but they emphasize the particular activity on which a person concentrates in earning a livelihood. Certainly, as to Mr. Geibe, raising dogs for sale did not come within that category.

The trial court found that the insurance policy's exclusionary portion did not apply because Geibe's raising and sale of the dogs was a hobby and not his trade, profession or occupation. I think this determination must be upheld for several reasons: First, I think the facts show that Mr. Geibe raised St. Bernard puppies for the fun of it and that profit was an incidental consideration. Second, I think that if there is a fact question, we are bound by the trial court's finding if sustained by any competent evidence. Third, if there is an ambiguity in the insurance policy, about which reasonable minds may differ, in determining whether Geibe's activity in relation to the dogs was a hobby or business pursuit, the issue must be resolved in favor of him as the policy holder and against the writing company."

534 P.2d 1297.

In *Fadden, supra,* the New York court reiterated the two-tier test for determining a "business pursuit" first set forth in *Aurigemma, supra,* as follows:

"To constitute a business pursuit, there must be two elements: first, continuity, and, secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and, as to the latter, there must be shown to be such activity as means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements."

274 N.Y.S.2d at 241.

In *Warren v. Farmers Alliance Mutual Insurance Company,* (1972) 31 Colo.App. 292, 501 P.2d 135, the insured's main source of income was derived from the oil business. He also manufactured fiberglass sports car bodies as a hobby. When insured's fiberglass mold was consumed by fire, the insurer refused to cover the loss, claiming that the making of car bodies was a business, and therefore, excluded from coverage. However, the Colorado appellate court affirmed the trial court's finding that the activity did not fall within the business property exclusion in his homeowners policy, and said:

"Defendant contends that the finding of the trial court that plaintiff was engaged in a hobby and not a business was error.

Although there was evidence from which the trial court could have found that the manufacture of the automobile bodies may have been a business pursuit, the plaintiffs' main economic support was income from the oil business. The testimony was undisputed that the car bodies were sold at considerably less than market value, and that plaintiff only sought to recover this cost in providing them for others. Warren further testified that his main incentive for engaging in the production of the bodies was the pride and enjoyment he derived from seeing them in use and from helping other people mount them on their sports cars."

501 P.2d at 136.

In *Duncan, supra,* because the insurer failed to expressly define "business pursuits" in its policy, the court ruled against it, declaring:

"The exclusion as to 'business pursuits' (1d) is also inapplicable. Again we refer to the terms of the policy. Although there is no express definition of 'business pursuits,' the policy defines 'business' as 'a trade, profession or occupation, including farming, and the use of any premises

or portion of residence premises for any such purposes.'

' "Contracts of insurance, like other contracts are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense," [Cit.]' *Wallace v. Virginia Surety Co.,* 80 Ga. App. 50, 52, 55 S.E.2d 259, 261; *State Farm Fire, etc., Co. v. Rowland,* 111 Ga. App. 743, 143 S.E.2d 193. Dictionaries supply the 'plain, ordinary, and popular sense.' Webster's New International Dictionary (2d Ed.) gives these definitions: 'Trade' is 'The business one practices or the work in which one engages regularly'; 'profession' is 'The occupation ... to which one devotes oneself'; and 'occupation' is 'That which occupies, or engages, the time and attention; the principal business of one's life.' None of these would include the spare time racing interest of the insured, who was gainfully employed as a full-time mechanic, that being his trade, profession or occupation. Accordingly, the incident here which is the basis of the neighboring youngster's lawsuit is not pursuant to the insured's 'business' and did not fall within the 'business pursuits' exclusion. Compare *Badger Mutual Ins. Co. v. Hancock,* 116 Ga.App. 262, 157 S.E.2d 58.

'Where an insurance company seeks to invoke an exclusion contained in its policy, it has the burden of showing that the facts came within the exclusion. [Cit.]' *Darby v. Interstate, etc., Ins. Co.,* 107 Ga.App. 409, 130 S.E.2d 360. See also *Hartford Accident, etc., Co. v. Hulsey,* 109 Ga.App. 169(2), 135 S.E.2d 494. Sub judice the insurer failed to meet this burden."

206 S.E.2d 674.

Similarly, in *Askerud, supra,* at 539–540, the Minnesota Supreme Court reversed a trial court judgment finding in favor of the insurance company, and held:

"The policy expressly covers premises owned by the insured, which include the building here in question. We are not persuaded that this was business property within the definitions in the policy. There was no activity in the sense of a 'trade, profession or occupation' being conducted on the property. The insured was regularly employed at the George A. Hormel Company and this was the only house he ever attempted to build, although he had helped friends on other occasions during his spare time. He had often engaged in repair jobs during off hours, and he and Turvold 'used to get together to make this and that together.' He was not an experienced carpenter or contractor. We are of the opinion that the business contemplated by the printed provisions of the policy was a type of activity in which persons regularly engage for the purpose of earning a livelihood or for gain such as a 'trade, profession or occupation.' This criteria is certainly not met by the spare time endeavors of the insured in this case. In excluding 'business pursuits' the policy intends to exclude coverage of commercial enterprises rather than the type of activity here demonstrated."

From *Askerud,* we note that spare-time activity of an insured was held not to constitute a "business pursuit" within the meaning of the business exclusion provision of the insured's homeowners policy.

In *Dewey v. Niagara Fire Ins. Co.,* (1968) 16 Ohio Misc. 297, 242 N.E.2d 692, an Ohio case heavily relied upon by IUMI, the court held that motion picture equipment used by the insured, a part-time lecturer, was "business property" for purposes of an exclusionary clause in a theft policy. However, the facts in *Dewey* disclose that Mr. Dewey, the insured, had retired as an employee of Joseph & Feiss Company and subsequently spent as much as six months of each year traveling, giving lectures and showing films. Mr. Dewey also spent three or four months a year away from his home lecturing to various other groups. The property loss occurred away from home and involved the loss of equipment he used in his lecturing business from which he received substantial income. The gross fees from his

lecturing and film shows noticeably exceeded his income from his employment with the Joseph and Feiss Company during the years before he retired from that company.

Upon these facts, the *Dewey* court had no difficulty reaching the result that the stolen property constituted "business property," and therefore, was excluded from coverage under the policy as "business property away from the premises." It appears that the insurance policy in *Dewey* did not specifically define the meaning of the word "business," so the court as a matter of law decided its meaning and the meaning of "business property," taking into consideration the evidence showing the manner in which the stolen property was used. The facts in *Dewey* may present a clear picture to that court as to what constitutes "business property;" however, our approach is more constrained.

 It is well settled law that a condition or exclusion in an insurance policy must clearly and unmistakably bring within its scope the particular act or omission that will bring the condition or exclusion into play in order to be effective, and coverage will not be excluded or destroyed by an exclusion or condition unless such clarity exists. *Tilley, supra.* Exclusions in policies of insurance are to be construed, if possible, so as to avoid forfeitures. *Glens Falls Insurance Co. v. Michael,* (1905) 167 Ind. 659, 74 N.E. 964.

 Unlike *Dewey,* Mr. Asbury is employed as a mill operator for his livelihood and only hunts and skins animals as a hobby. Given that the insurance policy did not clearly and unmistakably exclude from coverage such property as Asburys' pelts and that Mr. Asbury was gainfully employed, it is a reasonable expectation of the insured that his animal pelts were covered as his personal property. Simply because Mr. Asbury received money for an activity incidental to his occupation and which he considered his hobby does not make it "business property," (*See Askerud, Duncan, Warren* and dissent in *Wiley*) especially where the exclusion does not clearly define it as such. Defining "business" as a trade, profession or occupation is somewhat all-inclusive, the effect of which is arguably no different than defining "business" as "business." Certainly it is reasonable for Mr. Asbury to assume "business property" and "business" are matters having to do with his regular employment as a mill operator, and it is equally reasonable for him to assume, under the policy's broad definitions, that his animal skins are personal property covered against theft or loss by his homeowners policy. Exclusionary clauses are to be construed most strongly against insurers. *U.S.F. & G. Insurance Company v. Brannan,* (1979) 22 Wash.App. 341, 589 P.2d 817.

 We also agree with the Asburys that the special $500 limit of liability provision on furs creates an ambiguity as to whether his animal pelts are specially and separately covered under that provision.[1] Unless it is clear from the language of the policy, an insurance policy should not be interpreted to remove from coverage risk against which an insured intended to protect himself.[2] *American States Insurance*

1. We note that the $500 special limit of liability applies to "furs." While it is not specifically raised by either party, there may be a further ambiguity in the policy as to whether the animal pelts are "furs." Webster's New Collegiate Dictionary (1976 ed.) defines "fur" as "a piece of the dressed pelt of an animal used to make, trim, or line wearing apparel." "Pelt" is defined as "undressed skin with its hair, wool, or fur; a skin stripped of hair or wool for tanning." Thus, it may be said that no special limit should apply to the stolen skins as they are not "furs," but fully coverable personal property. The trial court should certainly con-

sider the policy in light of this further ambiguity.

2. In a recently published opinion, *Fuston v. National Mutual Insurance Co.,* (1982) Ind. App., 440 N.E.2d 751, this court recognized the continual problem insurance companies create in failing to clearly and specifically provide in an exclusionary clause what matters will not be covered by the policy. Therein we stated at file copy page 6:
 "In spite of the cases of some years standing concerning the possibility that one of the co-insureds may commit arson, National has done nothing to provide a plainly worded exclusion to cover that eventuality. If the

*Co. v. Aetna Life & Casualty Company,* (1978) Ind.App., 379 N.E.2d 510. It also bears repeating that under Indiana law an ambiguous insurance policy will be construed liberally in favor of the insured. *Huntington Mutual Insurance Company v. Walker,* (1979) Ind.App., 392 N.E.2d 1182.

We are ever mindful that this cause is before us on summary judgment. Whether an activity is a "business" or property is "business property" under an insurance policy is almost always a factual question presented for determination by the trier of fact or jury. *Brannan, supra.* That is the case here, and therefore, the trial court erred in granting summary judgment in favor of IUMI.

We reverse and remand for trial.

RATLIFF, P.J., and ROBERTSON, J., concur.

innocent spouse were denied any recovery, one could visualize situations in which one spouse, the sole owner of a piece of property, might convert the title to tenancy by the entireties thinking himself insured and later suffer a devastating loss due to the arson of the other spouse."

Thus such haphazard and ill-defined provisions in a policy can work much mischief on an unsuspecting insured.